**HAMPTON ROADS INDUSTRIAL ELECTRONICS CORPORATION**

v.

**UNITED STATES.**

No. 283-58.

United States Court of Claims.

Dec. 2, 1959.

Seymour Krieger, Washington, D. C., for plaintiff.

George Bunn and Arnold, Fortas & Porter, Washington, D. C., were on the briefs.

Robert Livingston, Washington, D. C., with whom was Asst. Atty. Gen. Charles K. Rice, for defendant. James P. Gar-

land and Lyle M. Turner, Washington, D. C., were on the brief.

LARAMORE, Judge.

This is a suit for a refund of excise taxes paid under protest by the plaintiff pursuant to a ruling of the Internal Revenue Service, which ruling plaintiff asserts is erroneous.

Plaintiff was engaged in the business of furnishing background music to commercial subscribers in the Newport News-Norfolk area of Virginia. Some of the subscribers were served by means of wire lines, and as to these subscribers, the excise tax imposed by section 4251 of the Internal Revenue Code of 1954, 26 U.S.C.A. § 4251, on "wire and equipment service" was paid, and no claim for refund was made. However, most of the subscribers to the service were served by radio through the facilities of FM broadcast station WGH-FM, and it is with respect to the taxes levied on these subscribers that plaintiff claims a refund.

The service in question consisted of broadcasting electrical signals derived from a musical source such as a disc or tape (supplied by the Muzak Corp.) on a "multiplex" basis, or subcarrier of the main radio channel. Under this multiplex method, WGH-FM transmitted two separate radio programs simultaneously —its regular broadcast program service which was carried on its main channel and could be received by the ordinary household-type FM receiver—and the musical program service which was transmitted by means of subcarrier modulation of the main channel and which could not be received by the ordinary household-type FM radio receiver. Special multiplex receivers were installed in the subscribers' premises, which filtered out the regular broadcast programs so that only the musical program service could be heard. There is no dispute as to the facts of the case.

The sole question is whether or not amounts paid by commercial subscribers for a service providing background music by means of radio transmissions are subject to the excise tax imposed by section 4251 on "wire and equipment service."

Sections 4251 and 4252 of the Internal Revenue Code of 1954, 26 U.S.C. 1952 ed. Supp. II, §§ 4251, 4252, which reenacted section 3465 of the Internal Revenue Code of 1939, added as an amendment by the Revenue Act of 1941, 55 Stat. 714, 26 U.S.C. 1940 ed. Supp. I, § 3465, read in part as follows:

"§ 4251. Imposition of tax.

"There is hereby imposed on amounts paid for the communication services or facilities enumerated in the following table a tax equal to the percent of the amount so paid as is specified in such table:

| Taxable service | Rate of tax (Percent) |
|---|---|
| "Local telephone service ...... | 10 |
| "Long distance telephone service ................... | 10 |
| "Telegraph service .......... | 10 |
| "Leased wire, teletypewriter or talking circuit special service | 10 |
| "Wire and equipment service .. | 8 |

"The taxes imposed by this section shall be paid by the person paying for the services or facilities.

"§4252. Definitions.

\* \* \* \* \* \*

"(b) Long distance telephone service.

"As used in section 4251 the term 'long distance telephone service' means a telephone or radio telephone message or conversation for which the toll charge is more than 24 cents and for which the charge is paid within the United States.

"(c) Telegraph service.

"As used in section 4251 the term 'telegraph service' means a telegraph, cable, or radio dispatch or message for which the charge is paid within the United States.

"(d) Leased wire, teletypewriter or talking circuit special service.

"As used in section 4251 the term 'leased wire, teletypewriter or talking circuit special service' does not include any service used exclusively in rendering a service taxable as

wire and equipment service. The tax imposed by section 4251 with respect to a leased wire, teletypewriter or talking circuit special service shall apply whether or not the wires or services are within a local exchange area.

"(e) Wire and equipment service.

"As used in section 4251 the term 'wire and equipment service' shall include stock quotation and information services, burglar alarm or fire alarm service, and all other similar services, but not including service described in subsection (d) of this section. The tax imposed by section 4251 with respect to wire and equipment service shall apply whether or not the wires or services are within a local exchange area."

In 1942, the Treasury Department issued regulations pursuant to the authority given it by section 3472. Section 130.38(b), as amended by T.D. 5559, 1947–1 Cum.Bull. 160, of Treasury Regulations 42, reads in part as follows:

" * * * In general, wire and equipment service includes the following and similar services:

* * * * * *

"(3) Channels furnished between a point of origin and the subscribers premises over which are given stock and bond market quotations and reports, racing results, baseball scores and other sporting results, news items, musical programs, weather reports, the time, etc. * * * "

This regulation has not been materially changed since its promulgation in 1942, and it has been made applicable to the Internal Revenue Code of 1954 by T.D. 6091, 1954–2 Cum.Bull. 47.

The defendant contends that the point-to-point transmission of plaintiff's musical programs by radio is what the statute and regulations contemplate to be a "wire and equipment service."

The distinction between wire communication and radio or "wireless" communication has long been well understood. Consequently, when Congress used "wire" in section 4251, and its pred-

ecessor section, it must have intended to exclude "radio." This is made abundantly clear by the fact that in two places in both section 3465 of the 1939 Code, and section 4252, which defines terms used in section 4251, the word "radio" is used. Had Congress intended that "wire and equipment service" include radio, it would surely have used the word "radio" in section 4252(e) as it did in section 4252(b) when it defined "long distance telephone service" to mean a telephone or radio telephone message, and as it did in section 4252(c) when it defined "telegraph service" to mean a telegraph, cable, or radio dispatch or message.

As to defendant's alternative argument that because some wire transmission was involved in plaintiff's service (both at the point of transmission, and at the point of reception), it comes within the scope of the code provision even if a narrow interpretation of the phrase "wire and equipment service" is used, it is sufficient to say that since radio was the instrumentality through which the service was provided, defendant's argument must fall.

The Government takes the position that when Congress first adopted the language "wire and equipment service" in 1941, it intended to include any technical methods of communication not then in regular commercial use, hence, the system here in question is within the purview of the statute.

However, such a service could not have been in the contemplation of Congress, because radio was not being used in 1941 to provide background music to commercial subscribers.

The defendant maintains that the legislative history of section 133 of the Excise Tax Technical Changes Act of 1958, P.L. 85–859, 72 Stat. 1275, which amended the language "all other similar services," by adding the parenthetical clause "whether or not oral transmission is involved," makes clear what the Congressional intent has been, because in S.Rep. No. 2090, 85th Cong., 2d sess., the Senate Finance Committee said:

"The phrase 'all other similar services' includes new innovations in the wire and equipment field. This is in accordance with the interpretation of such phrase under present law."

In our opinion it does not aid the defendant's case to say that "all other similar services" includes new innovations in the *wire and equipment field.* This language still limits the class to "wire" communications.

It is further contended by the defendant that since the system in question is made subject to the tax by a regulation in effect since 1942, Congress, by its 1954 re-enactment of the language in issue, and its failure to amend the provision in 17 years although it had many opportunities to so do, should be presumed to have sanctioned the regulation and the 1956 ruling (Rev.Rul. 56–527, 1956–2 Cum.Bull. 839) based thereon which is here attacked. McCaughn v. Hershey Chocolate Co., 1931, 283 U.S. 488, 51 S.Ct. 510, 75 L.Ed. 1183; M. E. Blatt Co. v. United States, 1938, 23 F. Supp. 461, 87 Ct.Cl. 413, 421.

 There was no interpretation of the regulation between 1942 and 1956. Congress may not even have been aware of its existence in 1954, and the 1954 re-enactment could not have adopted an administrative interpretation which was not promulgated until 1956. The failure of Congress since 1956 to amend the language is not tantamount to an adoption or sanctioning of the 1956 ruling. Three years is not a period of time long enough to invoke a presumption of Congressional acquiescence. Furthermore, where the meaning of a statute is plain, subsequent re-enactment does not adopt contrary administrative construction. Louisville and N. R. Co. v. United States, 1931, 282 U.S. 740, 759, 51 S.Ct. 297, 75 L.Ed. 672; Biddle v. Commissioner, 1938, 302 U.S. 573, 582, 58 S.Ct. 379, 82 L.Ed. 431. And, where the provisions of an act are unambiguous, and its direction specific, there is no power to amend it by regulation. Koshland v. Helvering, 1936, 298 U.S. 441, 447, 56 S.Ct. 767, 80 L.Ed.

1268; United States v. Calamaro, 1957, 354 U.S. 351, 359, 77 S.Ct. 1138, 1 L.Ed. 2d 1394; New World Life Insurance Company v. United States, 1939, 26 F. Supp. 444, 88 Ct.Cl. 405, 451.

 Treasury Regulations constitute contemporaneous constructions of the revenue statutes by those charged with the administration of these statutes, and should not be invalidated except for weighty reasons. Commissioner of Internal Revenue v. South Texas Lumber Co., 1948, 333 U.S. 496, 501, 68 S.Ct. 695, 92 L.Ed. 831; Stuyvesant Town Corp. v. United States, 1953, 111 F.Supp. 243, 124 Ct.Cl. 686, 694. Treasury regulations, however, need not be sustained unless reasonable and plainly consistent with the revenue statute. Commissioner v. South Texas Lumber Co., supra. The regulation here involved was neither reasonable nor plainly consistent with the statute. Courts are not bound by an administrative construction. Burnet v. Chicago Portrait Co., 1932, 285 U.S. 1, 16, 52 S.Ct. 275, 76 L.Ed. 587.

 The Government also argues that the service in question can be brought within section 4251 as section 4252(e) states that the term "wire and equipment service" shall include stock quotation and information services, burglar alarm or fire alarm service, and all other similar services, and the service here involved is a "similar service". This argument, too, must fall. A service to be brought within the scope of section 4251 by the application of the rule of *ejusdem generis*, must, we think, be a wire service as the services enumerated all utilize wire, and a service to be brought within the section by the general language "all other similar services" must likewise utilize wire and not radio as its primary method of providing the service. General terms are limited by a specification of particulars to things of the same general class. F. W. Fitch Co. v. United States, 1945, 323 U.S. 582, 585, 65 S.Ct. 409, 89 L.Ed. 472.

 Citing United States v. Stewart, 1940, 311 U.S. 60, 71, 61 S.Ct. 102, 85 L.Ed. 40, the defendant contends that

exemptions from taxing statutes cannot rest upon mere implication, but are to be narrowly construed. Though this is an accurate statement of the law, it has no application here. The question is not whether plaintiff's service is to be exempted from a tax, but whether or not it is to be included as a "wire and equipment service" and be subject to the excise tax.

 The Government also takes the position that the tax in dispute appears to be exclusively a revenue raising measure, applicable to communications generally, and should not be so narrowly construed as to exclude one of the most common methods of communication. Ray-bestos-Manhattan Inc., v. United States, 1935, 296 U.S. 60, 62, 56 S.Ct. 63, 80 L.Ed. 44. Therefore, the Government argues that the meaning of a word or phrase contained in a categorization is dependent upon the purpose of the statute which uses that word or phrase, and it is the kind of communication service rendered that determines taxability, not how it is rendered. United States v. Korpan, 1957, 354 U.S. 271, 77 S.Ct. 1099, 1 L.Ed.2d 1337. The short answer to this argument is that where the meaning of a statute is plain, and its language is not ambiguous, construction is not required.

And lastly, defendant contends that it is difficult to believe that Congress intended to discriminate in favor of those subscribers who receive the service in part via radio and against other subscribers who receive the musical program service wholly by means of readily accessible wire lines. If there is discrimination in the imposition of a tax, it is for Congress to remedy, not the courts.

For the above reasons we believe the service rendered by plaintiff does not come within the scope of the taxing statute and that the regulation thereunder which purports to include plaintiff's type of service is inconsistent with the statute.

Accordingly, plaintiff's motion for summary judgment is granted, and defendant's cross-motion is denied. Judg-

ment will be entered for plaintiff for $81.21 with interest as provided by law.

JONES, Chief Judge, LITTLETON (Retired) and WHITAKER, Judges, concur.