## UNITED STATES *v.* CLARK ET AL.

No. 80–1121.   Argued November 3, 1981—Decided January 12, 1982

O'CONNOR, J., delivered the opinion for a unanimous Court.

*Alan I. Horowitz* argued the cause for the United States. On the briefs were *Solicitor General Lee*, former *Solicitor General McCree*, *Acting Assistant Attorney General Martin*, *Deputy Solicitor General Geller*, *Mark I. Levy*, *Mark H. Gallant*, and *Harvey J. Wilcox*.

*John I. Heise, Jr.*, argued the cause for respondents. With him on the brief was *Samuel Resnicoff*.*

JUSTICE O'CONNOR delivered the opinion of the Court.

The issue in this case is whether 5 U. S. C. § 5334(b), which requires a two-step pay increase for federal employees "promoted . . . to a position in a higher grade," applies to prevailing wage rate employees promoted to General Schedule positions. We hold that it does not apply, and reverse the judgment of the Court of Claims.

I

This case involves the relationship between the two principal pay systems for federal employees and the pay treatment to which an employee moving from one system to another is entitled. Both systems are governed by Title 5, United States Code.

One of the pay systems, the General Schedule (GS), 5 U. S. C. § 5331 *et seq.* (1976 ed. and Supp. V), applies to federal "white-collar" employees. See R. Vaughn, Principles

---

*\*Edward J. Hickey, Jr.*, and *Thomas A. Woodley* filed a brief for the Public Employee Department, AFL–CIO, as *amicus curiae* urging affirmance.

of Civil Service Law § 6.2(a), p. 6–4 (1976) (hereinafter Vaughn). The GS is divided into 18 numbered grades; as the number of the grade increases, so do pay and responsibilities. §§ 5104 and 5332 (1976 ed. and Supp. V). The grades are subdivided into rates of pay or "steps." § 5332. The salary for each step of each grade in the GS is uniform nationwide.[1]

The second principal pay system is the prevailing rate wage system (WS), 5 U. S. C. § 5341 *et seq.* (1976 ed. and Supp. V), which primarily applies to those federal "blue-collar" employees specifically excluded from the GS. See §§ 5102(b), (c)(7), 5331, and 5342(a)(2)(A); Vaughn § 6.2(b), p. 6–17. The WS also is divided into grades and subdivided into "steps." The rate of pay for each step within each grade is based upon wage surveys of prevailing rates for comparable work in local wage areas. § 5343 (1976 ed. and Supp. V); Office of Personnel Management, Federal Personnel Manual, Supp. 532–1, 56 (Apr. 14, 1980) (hereinafter FPM). Pay rates for positions within the WS thus vary from one locale to another.

Salary treatment for GS employees who change their employment status and employees shifted or hired into the GS system is governed by 5 U. S. C. § 5334 (1976 ed. and Supp. V) and regulations promulgated pursuant thereto. Under the statute, an employee's salary after promotion is determined by reference either to the "highest previous rate" rule[2] or to the "two-step increase" rule.[3]

---

[1] The Federal Pay Comparability Act of 1970, 5 U. S. C. § 5301 *et seq.* (1976 ed. and Supp. V), defines the principles applied to determine GS salaries.

[2] The "highest previous rate" rule derives from 5 U. S. C. § 5334(a) (1976 ed., Supp. V), which provides in part:

"The rate of basic pay to which an employee is entitled is governed by regulations prescribed by the Office of Personnel Management [formerly the Civil Service Commission] in conformity with this subchapter and chapter 51 of this title when—

(1) he is transferred from a position in the legislative, judicial, or executive branch to which this subchapter does not apply;

.  .  .  .  .

(6) his employment status is otherwise changed; or

Prior to July 1973, all six respondents worked as federal civilian employees for the Supervisor of Shipbuilding, Department of the Navy. In those positions, they were paid pursuant to the WS. Between July 1973 and October 1974, all were promoted to positions covered by the GS.[4] After his promotion, Libretto learned that the other respondents received a salary increase equivalent to a two-step pay increase on their appointment to the GS positions.[5] Since Li-

---

(7) his position is changed from one grade to another grade."

At the time of respondents' promotions, 33 Fed. Reg. 12450 (1968), 5 CFR § 531.203(c) (1969), one of the regulations prescribed by authority of § 5334(a), provided in part:

"Subject to § 531.204 . . . , when an employee is reemployed, transferred, reassigned, promoted, or demoted, the agency may pay him at any rate of his grade which does not exceed his highest previous rate; however, if his highest previous rate falls between two rates of his grade, the agency may pay him at the higher rate."

[3] The "two-step increase" rule is codified in 5 U. S. C. § 5334(b) (1976 ed., Supp. V), which provides in pertinent part:

"An employee who is promoted or transferred to a position in a higher grade is entitled to basic pay at the lowest rate of the higher grade which exceeds his existing rate of basic pay by not less than two step-increases of the grade from which he is promoted or transferred."

At the time of respondents' promotions, 33 Fed. Reg. 12450 (1968), 5 CFR § 531.204(a)(1) (1969), the regulation interpreting § 5334(b), provided:

"The requirements of section 5334(b) of title 5, United States Code, apply only (i) to a transfer from one General Schedule position to a higher General Schedule position, and (ii) to a promotion from one General Schedule grade to a higher General Schedule grade."

[4] Respondents' changes of position were as follows: Clark, from WS ship surveyor (shipfitter) to GS quality assurance specialist; D'Aversa, from WS ship surveyor (pipefitter) to GS production controller; Libretto, from WS ship surveyor (machinist) to GS engineering technician; Proto, from WS ship surveyor (electrician) to GS production controller, and later to GS contract negotiator; Scialpi, from WS ship surveyor (shipfitter) to GS contract negotiator; and Wolfus, from WS ship surveyor (machinist) to GS contract negotiator.

[5] The parties agree that Libretto's salary after promotion was determined by reference to the "highest previous rate" rule. Because his WS salary fell between two steps of his new GS grade, he was given the higher

bretto's increase was based upon the "highest previous rate" rule and was much smaller, he filed a claim with the Department of the Navy. As a result, the Navy reexamined the salary treatment afforded respondents. Concluding the salaries of all should have been determined by applying the "highest previous rate" rule, the Navy denied Libretto's claim and notified the other respondents their salaries would be reduced accordingly.

Respondents unsuccessfully pursued their administrative remedies and then filed this action in the Court of Claims under the Tucker Act, 28 U. S. C. § 1491, and the Back Pay Act of 1966, 5 U. S. C. § 5596. Respondents contended they were entitled to a two-step increase in pay pursuant to 5 U. S. C. § 5334(b) (1976 ed., Supp. V). The Government opposed the claims on the ground that § 5334(b) applies only to promotions within the GS and not to shifts or promotions between the WS and the GS, which are governed by § 5334(a).

The Court of Claims, reasoning that respondents had been "promoted" within the meaning of 5 CFR § 531.202(h)(2)

---

salary level of the new GS grade. The parties disagree as to the method used to determine the postpromotion salaries of the remaining respondents. Respondents allege they were simply given a two-step increase, pursuant to § 5334(b). The Government explains their GS salaries were originally determined by first applying the provision of subchapter S8–3d of the FPM, Supp. 532–1, Inst. 8 (Jan. 16, 1973), which stated that an employee promoted to a WS position is entitled to be paid at the lowest scheduled rate that exceeds his existing rate of pay by no less than a one-step increment of the category from which he was promoted. Once this adjustment had been made, the new GS salaries of these respondents were computed by applying the "highest previous rate" rule of 5 CFR § 531.203(c) (1969) to the adjusted rates of pay. Thus, each of these respondents was awarded two salary increases for a single change of position. If this method was utilized, the salary determinations were obviously erroneous because subchapter S8–3d and the "highest previous rate" rule of 5 CFR § 531.203(c) (1969) are not applicable to the same personnel action. Regardless of the method used, the effect was to give all respondents except Libretto the equivalent of a two-step increase.

(1969),[6] determined they were entitled to a two-step increase under § 5334(b). Accordingly, the court invalidated, as inconsistent with the statute, 5 CFR § 531.204(a) (1969), which construed § 5334(b) as limited to transfers or promotions within the GS. 220 Ct. Cl. 278, 599 F. 2d 411 (1979).

After remand, the parties stipulated to the amount of respondents' recovery, and the court entered final judgment on August 8, 1980. We granted the Government's petition for writ of certiorari to the United States Court of Claims. 450 U. S. 993 (1981). We have jurisdiction based upon 28 U. S. C. § 1255.

## II

We look first to the language and organization of the statutes governing General Schedule pay rates and the prevailing rate wage system. If the statutory language is clear, it is ordinarily conclusive. See *Consumer Product Safety Comm'n* v. *GTE Sylvania, Inc.*, 447 U. S. 102 (1980).

Section 5334 is part of subchapter III, chapter 53 of Title 5, entitled "General Schedule Pay Rates." Subsection 5334(a) describes the general conditions, including promotions, under which a GS employee is entitled to a change in basic pay. It directs simply that the rate is "governed by regulations prescribed by the [Civil Service Commission]. . . ." Following that direction, the Civil Service Commission promulgated the "highest previous rate" rule.[7]

---

[6] At the time of respondents' promotions, 33 Fed. Reg. 12449 (1968), 5 CFR § 531.202(h) (1969), provided:

"'Promotion' means a change of an employee, while continuously employed, from:

(1) One General Schedule grade to a higher General Schedule grade; or (2) A lower rate paid under authority other than subchapter III of chapter 53 of title 5, United States Code, to a higher rate within a General Schedule grade."

[7] See 5 CFR § 531.203(c) (1969). The Civil Service Commission promulgated the initial regulation. In 1978, Congress substituted the Office of Personnel Management for the Civil Service Commission. 5 U. S. C. § 1101 *et seq.* (1976 ed., Supp. V). The terms of the regulation have remained consistent since 1950. See n. 15, *infra.*

In subsection 5334(b), on the other hand, Congress restricted the Commission's discretion in one limited situation:

"An employee who is promoted or transferred to a position in a higher grade is entitled to basic pay at the lowest rate of the higher grade which exceeds his existing rate of basic pay by not less than two step-increases of the grade from which he is promoted or transferred."

For purposes of subchapter III, 5 U. S. C. § 5331 assigns the word "grade" the meaning given the term by 5 U. S. C. § 5102(a)(5). That section, in turn, defines a grade as those positions sufficiently similar to warrant their inclusion within one range of rates of basic pay "in the General Schedule." Giving § 5334(b) its plain meaning, then, when an employee is promoted to a position in a higher grade "in the General Schedule," he is entitled to pay which exceeds by two step-increases his pay in the grade "in the General Schedule" from which he was promoted.

The Wage System, on the other hand, is governed by subchapter IV of chapter 53, Title 5. No express statutory provision in subchapter IV defines how an employee's salary should be set when a WS employee is promoted to a GS position. Thus, the only applicable statutory provisions are those found in subchapter III and its accompanying regulations, which specifically limit the two-step increase to promotions within the GS. Nothing in the statutory language indicates Congress intended to include employees promoted from WS to GS within the two-step requirement of § 5334(b). Absent such language, the statute and the accompanying regulations reveal a congressional intent to apply the two-step increase provision of § 5334(b) only to promotions or transfers of employees already within the GS system.

### III

Although the language of the statute is clear, any lingering doubt as to its proper construction may be resolved by examining the legislative history of the statute and by according

due deference to the longstanding interpretation given the statute by the agencies charged with its interpretation. See *NLRB* v. *Bell Aerospace Co.*, 416 U. S. 267 (1974). The legislative history of § 5334(b) reinforces the apparent intent of the statutory language. The predecessor to § 5334(b) was § 802(b) of the Classification Act of 1949, 63 Stat. 954, 5 U. S. C. § 1071 *et seq.* (1946 ed. and Supp. IV) (1949 Act).[8] Through the 1949 Act, Congress completely revised the Classification Act of 1923, Pub. L. 516, 42 Stat. 1488, 5 U. S. C. § 661 *et seq.* (1925–1926 ed.). Under the latter statute, an employee who was at the top step of his grade could receive little or no salary increase upon promotion to a higher grade. That inequity resulted because the salary for the higher steps in one grade could equal or exceed the salary for the lower steps in the next higher grade. Congress' 1949 revision plainly undertook to correct this problem: the 1949 Act numbered among its stated purposes the need "to permit the solution of certain troublesome problems or to avoid unintentional pay inequities in the conduct of various personnel transactions." S. Rep. No. 847, 81st Cong., 1st Sess., 4 (1949). Congress, moreover, understood the precise nature of the salary overlap problem. The Committee Reports which accompanied the proposed revisions explained:

"At present, a promoted employee receives no immediate increase if he is already receiving a rate in the lower grade that also occurs in the higher grade. If he is receiving a rate in the lower grade that falls between two rates of the higher grade, he is promoted at the higher of these two rates.

"In too many cases, accordingly, an employee who is promoted to greater responsibilities or more difficult duties receives no immediate increase in pay. This is not in accord with the commonly accepted principle that a promotion in pay should [concurrently] accompany a promotion in duties and responsibilities.

---

[8] In 1962, the Act was amended to provide a two-step rather than a one-step salary increase. 5 U. S. C. § 1132(b) (1958 ed., Supp. V).

"Subsection (b) of section 802 corrects this situation." *Id.*, at 38; H. R. Rep. No. 1264, 81st Cong., 1st Sess., 12–13 (1949).

Examination of the history of the prevailing wage system dispels any notion that Congress intended the corrective measure of § 802(b) to apply to movement between the prevailing wage and Classification Act systems. In 1949, each federal agency had its own pay system for blue-collar workers. As a result, employees holding the same federal position in the same locale often received different wages if they worked for different agencies. In addition, each agency had its own job grading system for prevailing wage employees, which resulted in widely varying numbers of grades and wage steps.[9] Nothing in the legislative history suggests that Congress was even aware of—much less was attempting to adjust—the varied results that might occur if a prevailing wage worker moved into a Classification Act position. The 1949 legislative history suggests only that Congress was concerned with inequities that might occur through application of the Classification Act system to movement within that system.

Moreover, in 1972, approximately one year before respondents' promotions, Congress undertook a comprehensive examination of the prevailing wage statutes and amended existing laws to declare congressional policy for the payment of prevailing wage employees. See S. Rep. No. 92–791, p. 1 (1972). Congress' stated purpose was to codify existing law. *Ibid.* As part of the 1972 amendments, Congress for the first time directed that a grading system be established and maintained for prevailing wage employees.[10] 5 U. S. C.

---

[9] See Staff Report, President's Panel on Federal Compensation 107 (Jan. 1976).

[10] In 1965, President Johnson directed all executive agencies to coordinate their wage policies and practices under the leadership of the Chairman of the Civil Service Commission. See FPM, Supp. 532–1, App. A–1, B–B–1 (Nov. 16, 1965). As a result, the Coordinated Federal Wage System was developed. In 1972, Congress amended the prevailing wage

§ 5346 (1976 ed. and Supp. V). Even then, Congress made no effort to correlate the WS grades with those used in the GS. By that time, the agency practice of specifically limiting § 5334(b) and its predecessor to transfers between Classification Act, or GS, positions had been followed for nearly 25 years.[11] Congress' failure to correct that practice, if it did not correspond with congressional intent, at the very time Congress was revamping the laws applicable to pay for prevailing wage positions provides further evidence of its intent that § 802(b) and, later, § 5334(b) apply only to GS employees. See *United States* v. *Bergh*, 352 U. S. 40 (1956).

The absence of any indication that Congress intended § 5334(b) to apply to promotions into the GS from the WS is hardly surprising, since the two systems have no necessary or obvious relationship. First, because the WS involves an entirely separate pay structure based on prevailing rates in local wage areas, no necessary overlap occurs between WS and GS salaries. In fact, since WS rates vary by locale, an employee changing from a WS position to a GS position could receive a greater salary, a lesser salary, or the same salary as another employee making the identical change in another part of the country. Moreover, although by definition a change to a higher grade within the GS system involves a change to a position with greater responsibility (see 5 U. S. C. § 5102(a)(5) (1976 ed., Supp. V)), no similar relationship necessarily exists between a WS grade and a GS grade.[12]

---

statutes. The purpose of the 1972 amendments was to codify existing law and enact a system for all agencies to use for determining the prevailing wage rates. S. Rep. No. 92–791, p. 1 (1972). As part of the 1972 amendments, Congress added 5 U. S. C. § 5346, which directed the Civil Service Commission to establish and maintain a job grading system for positions covered by subchapter IV. That was the first time Congress directed the maintenance of a uniform system for WS employees.

[11] See Part IV, *infra*.

[12] The two systems are simply independent. Unlike the 10 steps or rates of pay in most GS grades (see 5 U. S. C. § 5332 (1976 ed. and Supp. V)), the WS currently uses only 5 rates for each position (see 5 U. S. C.

Although the legislative history does not expressly indicate that Congress intended to limit § 5334(b) and its predecessor to GS employees, the history provides ample indication that such was Congress' intent. Moreover, the reasons for enactment of the provision are consistent with such a limitation.

## IV

Although not determinative, the construction of a statute by those charged with its administration is entitled to great deference, particularly when that interpretation has been followed consistently over a long period of time. See *Piper* v. *Chris-Craft Industries, Inc.*, 430 U. S. 1 (1977). In this instance, the agency responsible for proposing and administering § 5334(b) has consistently construed it to apply only to promotions within the GS.

Section 802(b) of the 1949 Act was drafted and submitted to the Congress by the Civil Service Commission.[13] Soon after its enactment, the Civil Service Commission promulgated regulations interpreting the section. The first regulations guaranteed a pay increase to one promoted "to a higher grade between Classification Act [GS] positions . . . ." 15 Fed. Reg. 7868 (1950), 5 CFR § 25.104(a) (Supp. 1951).[14] In contrast, an employee promoted or transferred from another

---

§ 5343(c)(2) (1976 ed. and Supp. V)) and before 1972 used only 3 rates. See H. R. Rep. No. 92–339, p. 6 (1971); S. Rep. No. 92–791, p. 2 (1972). In addition, the range of pay in a GS grade is approximately 30 percent of the base rate, but the range in the WS is only approximately 16 percent. See 5 U. S. C. §§ 5332 (chart), 5343(e)(1)(A)–(E) (1976 ed. and Supp. V). Moreover, the periodic step increases in the WS occur considerably more quickly than in the GS. Compare 5 U. S. C. §§ 5335(a)(1)–(3) with 5 U. S. C. §§ 5343(e)(2)(A)–(C) (1976 ed. and Supp. V). As a result, the maximum rate of pay for a position is more often reached, and in a far shorter time, by a WS employee than by a GS employee.

[13] See S. Rep. No. 847, 81st Cong., 1st Sess., 1 (1949).

[14] Congress specifically excluded prevailing rate positions from the Classification Act of 1949. 5 U. S. C. § 1082(7) (1946 ed., Supp. IV). Those positions remain specifically excluded from the General Schedule. 5 U. S. C. §§ 5102(c)(7), 5331 (1976 ed. and Supp. V).

pay system into the Classification Act system was subject to the "highest previous rate" rule. 15 Fed. Reg. 1235 (1950), 5 CFR § 25.103(b) (Supp. 1951). Subsequent versions of the regulations continued to apply the automatic salary increase of § 802(b) and, later, of § 5334(b), only to promotions or transfers within the Classification Act, or GS, system.[15] In fact, the regulation in effect when respondents were promoted expressly provided that the two-step pay increase provision of § 5334(b) applied "only (i) to a transfer from one General Schedule position to a higher General Schedule position, and (ii) to a promotion from one General Schedule grade to a higher General Schedule grade." 33 Fed. Reg. 12450 (1968), 5 CFR § 531.204(a)(1) (1969).[16]

## V

The language of the statute, the entire statutory scheme, the legislative history, and consistent administrative inter-

---

[15] See, *e. g.*, 15 Fed. Reg. 7868 (1950), 5 CFR § 25.104(a) (Supp. 1951) (refers to "[a]n employee promoted, repromoted or transferred to a higher grade between Classification Act positions or grades"); 25 Fed. Reg. 7147 (1960), 5 CFR § 25.104(a) (1961) ("[t]he requirements of section 802(b) of the [Classification] Act apply in repromotion actions and in transfers involving promotions between Classification Act grades"); 28 Fed. Reg. 10948 (1963), 5 CFR § 531.204(a)(1) (1964) ("[t]he requirements of section 802(b) of the [A]ct, apply in a transfer involving a promotion between Classification Act grades"); 33 Fed. Reg. 12450 (1968), 5 CFR § 531.204(a) (1969) ("[t]he requirements of section 5334(b) of title 5, United States Code, apply only (i) to a transfer from one General Schedule position to a higher General Schedule position, and (ii) to a promotion from one General Schedule grade to a higher General Schedule grade").

[16] The General Accounting Office, authorized to settle and adjust "[a]ll claims and demands whatever . . . against [the Government]," 31 U. S. C. §§ 71, 72, has consistently determined that the "highest previous rate" rule, rather than the automatic step-increase provision, governs transfers or promotions from a WS position to a GS position. See, *e. g., In re Nail*, 59 Comp. Gen. 209 (1980); Letter Decision, 52 Comp. Gen. 695 (1973); Letter Decision, 52 Comp. Gen. 671 (1973); Letter Decision, 44 Comp. Gen. 518 (1965).

pretation all demonstrate the soundness of the Government's position that § 5334(b) is inapplicable to promotions from the Wage System to the General Schedule.

The judgment of the Court of Claims is reversed.

*It is so ordered.*