**Leslie T. WELSH and Mary Lee Welsh, Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

**No. 43–81T.**

United States Claims Court.

May 17, 1983.

Jon T. Flask, Washington, D.C., for plaintiff; Grossman & Flask, Washington, D.C., of counsel.

Abraham Gutwein, Washington, D.C., with whom was Asst. Atty. Gen. Glenn L. Archer, Jr., Washington, D.C., for defendant.

## OPINION

MAYER, Judge.

Plaintiff[1] brought this action to challenge disallowance of a refund of $261,-849.91 claimed by amended returns on the grounds that overly restrictive and invalid Treasury Regulations had deprived him of a statutorily permitted election to report as income the value of stock options in the year the options were granted, rather than in the year they were exercised. Defendant filed a counterclaim on grounds not now pertinent to the refund issue. The case is before the court on cross-motions for partial summary judgment limited to plaintiff's claim for refund.

## FACTS

Plaintiff Welsh was an officer, director and employee of Studebaker-Worthington, Inc. (SWI) during the years 1976–1979. Under incentive stock option plans available

---

1. Mary Lee Welsh is a plaintiff only because the case arose from joint federal income tax returns she cosigned. Therefore, reference is made throughout only to plaintiff Leslie T. Welsh.

to key executives of SWI, he received as part of his compensation in 1976 and 1977 non-qualified stock options[2] to purchase shares of SWI stock at their fair market value on the date the options were granted. The options were not actively traded on an established market. They were granted pursuant to different plans, but all were subject to the following significant restrictions: They were not vested and could not be exercised until at least one year from the date of grant. Even if vested, the options could not be exercised if plaintiff left his employment with SWI, unless the board of directors determined that his departure was in the best interests of the company. If not fully vested when plaintiff left SWI, no further vesting could occur. And they were non-transferable except upon the death of plaintiff.

On advice of counsel, plaintiff did not report any income as arising from his receipt of the options in 1976 or 1977. In 1978, when he exercised two of them, plaintiff reported income based on a claimed fair market value of the options at the time of exercise. In 1980, plaintiff filed amended returns for 1976, 1977 and 1978, in which he sought to report as income the value of the options in the years they were granted, 1976 and 1977, rather than the year he exercised them, 1978. This would have increased his tax liability for the former years, but significantly reduced it for the latter, giving rise to this claim for a refund.

Plaintiff's explanation for the chain of events which brought him to this pass re-volves around the proper interpretation of section 83 of the Internal Revenue Code of 1954, as amended (I.R.C.), 26 U.S.C. § 83, and the implementing Treasury Regulations, primarily section 1.83–7.

## DISCUSSION

Section 83 of the Code derives from the general rules established by the Supreme Court in *Commissioner v. LoBue,* 351 U.S. 243, 76 S.Ct. 800, 100 L.Ed. 1142 (1956), and is a comprehensive and complex arrangement of the rights, responsibilities and risks of transferees, as well as transferors, *see* I.R.C. § 83(h), of property in connection with the performance of services. Section 83(a) requires one who receives property for services rendered to recognize income in the year in which his rights in that property become substantially vested, that is, when his property is either transferable or not subject to a substantial risk of forfeiture, whichever occurs first.

Under section 83(b),[3] one who receives property which is not substantially vested is allowed 30 days from the date of its transfer to him nevertheless to elect to recognize income in the year of receipt of the property, rather than the year in which the property becomes substantially vested. The election allows the recipient potentially significant tax advantages depending on appreciation and later disposition of the underlying stock as a capital asset.

A section 83(b) election, however, is a congressionally mandated gamble. If the property should decline in value during the

---

**2.** These options are referred to as "non-qualified" because they are not the type of options described in sections 422, 423 and 424 of the Internal Revenue Code of 1954, 26 U.S.C. §§ 422, 423, 424.

**3.** I.R.C. § 83(b) provides:

*Election to Include in Gross Income in Year of Transfer.—*

(1) *In General.*—Any person who performs services in connection with which property is transferred to any person may elect to include in his gross income, for the taxable year in which such property is transferred, the excess of—

(A) the fair market value of such property at the time of transfer (determined without regard to any restriction other than a restriction which by its terms will never lapse) over

(B) the amount (if any) paid for such property.

If such election is made, subsection (a) shall not apply with respect to the transfer of such property, and if such property is subsequently forfeited, no deduction shall be allowed in respect of such forfeiture.

(2) *Election.*—An election under paragraph (1) with respect to any transfer of property shall be made in such manner as the Secretary prescribes and shall be made not later than 30 days after the date of such transfer. Such election may not be revoked except with the consent of the Secretary.

period between receipt and vesting, the recipient would be better off recognizing the diminished value as income when the property becomes substantially vested. And, if the recipient forfeits the property before it becomes substantially vested, he may not deduct his loss once he has made an election. I.R.C. § 83(b)(1). Whenever the recipient recognizes income, the amount taxed is the difference between the fair market value of the property interest and the amount the recipient paid for it. I.R.C. § 83(a) and (b)(1).

Some transfers of property in connection with the performance of services, however, are specifically excluded from section 83. Among them are the transfers of options without a readily ascertainable fair market value. I.R.C. § 83(e)(3). Treasury Regulation § 1.83–7(a) provides that the recipient of an option without a readily ascertainable fair market value as further defined reports no income at the time of receipt, but recognizes compensation when the option is exercised, even if its fair market value may have become readily ascertainable before then.

Plaintiff argues that as the recipient of restricted stock options he is unfairly excluded from application of section 83 by the definition of "readily ascertainable fair market value" in Treasury Regulation § 1.83–7(b), which his options could not satisfy. He says this definition is unduly restrictive and represents an unreasonable implementation of section 83.

Section 1.83–7(b)(2) requires options which are not actively traded on an established market, like the ones here, to satisfy specific criteria before they will be deemed

to have a valuation readily ascertainable, the prerequisite to application of section 83.[4] When options are non-transferable, not immediately exerciseable, or subject to any restriction which has a significant effect upon their fair market value, they fail to meet at least one of the criteria and will be deemed not to have a readily ascertainable fair market value.

Plaintiff says if the underlying stock had been transferred with these same restrictions, section 83 would apply and he could have elected under section 83(b) to recognize income in the year of receipt, as he wishes to do with his options. This, he believes, is fundamentally unfair and denies one class of taxpayers the protections and advantages available to others similarly situated.

■ It is unnecessary, however, for the court to reach the question of the validity of Treasury Regulation § 1.83–7. Even if it were determined that the regulation is invalid and that the options had a readily ascertainable fair market value, which plaintiff sought to demonstrate by presenting a professional appraisal, he failed to negotiate the statutorily imposed hurdle for recognizing income in the year of receipt. Section 83(b) requires plaintiff to elect within 30 days of receipt of his options if he chooses to include them in gross income for that year.

No attempted election was made until 1980, more than three and a half years after the first receipt of options. Plaintiff argues that because the regulation effectively prohibited him from making the election within 30 days of receipt, he should now be allowed to make it by amended return. He

4. In pertinent part, Treas.Reg. § 1.83–7(b)(2) provides:

When an option is not actively traded on an established market, it does not have a readily ascertainable fair market value unless its fair market value can otherwise be measured with reasonable accuracy. For purposes of this section, if an option is not actively traded on an established market, the option does not have a readily ascertainable fair market value when granted unless the taxpayer can show that all of the following conditions exist:

(i) The option is transferable by the optionee;

(ii) The option is exerciseable immediately in full by the optionee;

(iii) The option or the property subject to the option is not subject to any restriction or condition (other than a lien or other condition to secure the payment of the purchase price) which has a significant effect upon the fair market value of the option; and

(iv) The fair market value of the option privilege is readily ascertainable in accordance with paragraph (b)(3) of this section [which discusses considerations relevant to ascertainability and value of the privilege].

cites three cases where taxpayers were permitted to so make an election after they had failed to make it in an earlier year.

These cases, however, involve sections of the Code which contained no provisions governing the timing of the election. In two of them, a taxpayer was belatedly allowed to report income from the sale of property on an installment basis under section 44 of the Internal Revenue Code of 1939 (current version at 26 U.S.C. § 453) after failing to file notice of election in the year the property was sold. Section 44, however, unlike section 83, did not specify when the election had to be made. See C'de Baca v. Commissioner, 326 F.2d 189 (5th Cir.1964); Farber v. Commissioner, 36 T.C. 1142 (1961), aff'd on other grounds, 312 F.2d 729 (2nd Cir. 1963). In the third case, Mamula v. Commissioner, 346 F.2d 1016 (9th Cir.1965), a taxpayer was allowed to change his first election for reporting profit from the sale of real property after his timely election was disallowed by the IRS. The court noted that the taxpayer was not attempting to choose another method because he had subsequently learned it would be more advantageous, but because the IRS had insisted the first election be set aside. Id. at 1018.

Here, plaintiff now knows what he could not have known when section 83(b) required him to take a chance; his options have not been forfeited, and the options and underlying stock have increased in value. He now seeks the benefits of section 83 without having assumed the congressionally mandated risks.

■ The court recognizes plaintiff faced a dilemma when he received the options and was advised that he could not make a section 83(b) election because of Treasury Regulation § 1.83–7. However, he could have sought the election and challenged the regulation, as he did with his 1980 amended return, but he did not. That he may have lacked an economic incentive to question it or that to do so might have invited an unwelcome audit, as counsel suggests, does not excuse him. When faced with an apparent or supposed inconsistency between a statute and a regulation, the statute must govern the conduct of one's affairs. See Dixon v. United States, 381 U.S. 68, 74, 85 S.Ct. 1301, 1305, 14 L.Ed.2d 223 (1965); H. Wetter Manufacturing Co. v. United States, 458 F.2d 1033, 1035 (6th Cir.1972); Hampton Roads Industrial Electronics Corp., 147 Ct.Cl. 635, 641, 178 F.Supp. 474, 477 (1959). Plaintiff's challenge to the regulation could have and should have been made by seeking to elect within the time Congress said he should.

Plaintiff's failure to act within the statutorily required 30 days bars him from attempting to do so now by amended return. Cf. Kaufmann & Baer Co. v. United States, 133 Ct.Cl. 510, 516–17, 137 F.Supp. 725, 729 (1956). To extend the time beyond that prescribed is a legislative, not a judicial, function. Riley Co. v. Commissioner, 311 U.S. 55, 59, 61 S.Ct. 95, 97, 85 L.Ed. 36 (1940). While to some the result may appear harsh, it is noteworthy that the election binds the Commissioner and the transferor, SWI, as well as plaintiff. In any event, courts may not substitute their judgment for that of Congress to ameliorate the results of a statute. Id.

In light of this holding, any declaration about the validity of Treasury Regulation § 1.83–7 would be merely advisory. Even if the regulation were stricken, the outcome of this case would not be affected; plaintiff could not benefit from the ruling. Except where legislation specifically permits, such as in congressional reference cases, 28 U.S.C. §§ 1492 and 2509, this court is no freer to make advisory rulings than any other. Congress has specified that judgments of this court be reviewed in the United States Court of Appeals for the Federal Circuit and the Supreme Court of the United States, see Federal Courts Improvement Act of 1982 § 127, Pub.L. No. 97–164, 96 Stat. 25 (to be codified in 28 U.S.C. § 1295(a)(3)), and 28 U.S.C. § 1254, neither of which under Article III of the Constitution would be able to confirm the advice or reject it. See Glidden Co. v. Zdanok, 370 U.S. 530, 587, 82 S.Ct. 1459, 1492, 8 L.Ed.2d 671 (1961) (Clark, J., concurring); Muskrat v. United States, 219 U.S. 346, 356–57, 31

S.Ct. 250, 253–254, 55 L.Ed. 246 (1911); *Gordon v. United States,* 69 U.S. (2 Wall.) 561, 17 L.Ed. 921 (1865), discussed in *Glidden Co. v. Zdanok,* 370 U.S. at 554, 82 S.Ct. at 1475 (opinion of Harlan, J.). A decision to strike a regulation where it would have no effect on the outcome would remove the matter from the rubric of "case or controversy" essential to justiciability under the Constitution. *See Aetna Life Insurance Co. v. Haworth,* 300 U.S. 227, 240–41, 57 S.Ct. 461, 463–464, 81 L.Ed. 617 (1937); *see also City of Los Angeles v. Lyons,* —— U.S. ——, ——, 103 S.Ct. 1660, 1664–1665, 75 L.Ed.2d 675 (1983).

Accordingly, it is ORDERED that defendant's motion for partial summary judgment is GRANTED and plaintiff's cross-motion for partial summary judgment is DENIED.

