**Candace J. SULLIVAN, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 93–83C.**

United States Claims Court.

Dec. 9, 1983.

Steven M. Schneebaum, Washington, D.C., for plaintiff; Bart S. Fisher and Lisa A. Shapiro, Patton, Boggs & Blow, Washington, D.C., of counsel.

Robert A. Reutershan, Washington, D.C., with whom was Asst. Atty. Gen. J. Paul McGrath, Washington, D.C., for defendant; Roxanne Ando, Dept. of Educ., and John Salter, Office of Personnel Management, Washington, D.C., of counsel.

## OPINION

MAYER, Judge.

Plaintiff Sullivan brought suit for severance pay because she was involuntarily separated from a limited term appointment in the federal service. Defendant denies her entitlement because regulations of the Office of Personnel Management (OPM) implementing 5 U.S.C. § 5595 prohibit these payments to former federal employees in plaintiff's circumstance. The case is before the court on defendant's motion to dismiss for failure to state a claim upon which relief can be granted and plaintiff's motion for summary judgment.

## FACTS

Plaintiff was a competitive service federal employee with the Department of Justice and the Department of Housing and Urban Development from September 23, 1966, until March 3, 1974. On that day, without a break in service, she voluntarily transferred to a time-limited, excepted service appointment in the National Institute of Education (NIE). When she transferred, she retained her seniority, leave entitlement, health insurance, retirement and other benefits. She was first given a three-year limited appointment. However, upon her promotion in August of 1976 she was given a new three-year appointment. On August 1, 1979, she was given a one-year appointment without change in salary or grade. The

one-year appointment was successively renewed in 1980 and 1981. At the end of the stated term on July 30, 1982, however, she was separated "in order to accommodate the changing needs of NIE research-oriented mission." At that time she had 15 years and 10 months of federal service.

When plaintiff was initially appointed, NIE had authority to hire personnel exempt from civil service requirements. This was primarily to attract scientists and researchers for short-term assignments who could then return to their prior employment. As a matter of policy and practice, however, the authority to hire outside the civil service rules was exercised with a wide variety of program and planning employees. The officer responsible for hiring, now with the Office of Management and Budget, hired plaintiff with the mutual understanding that her job was to be a continuing one and that her term appointment would be renewed as long as her job performance was satisfactory, there was a continued need for her job function and adequate agency funding existed. On that basis, plaintiff left her tenured position in the civil service and accepted a limited term appointment.

When she was separated in 1982, she applied for severance pay. Her application was approved by the personnel office of NIE but that approval was reversed by higher authority in the Department of Education.

## DISCUSSION

The issues for decision are whether, as plaintiff says, 5 U.S.C. § 5595 requires payment of severance pay or, as defendant says, OPM regulations, specifically 5 C.F.R. § 550.704(b)(4)(i), take her out of the apparent coverage of the statute. If plaintiff is correct, the other question is whether she left federal service voluntarily or involuntarily.

### Statutory Construction

The crux of the argument over the statute is plaintiff's position that it specifically authorizes her to receive severance pay upon her involuntary separation from federal service and that the OPM regulation

disqualifying her is inconsistent with the statute and void. In pertinent part, section 5595 says:

(a) For the purpose of this section—

(2) "employee" means—

(A) an individual employed in or under an agency; ...

but does not include—

(i) [certain employees paid at a rate provided in the Executive Schedule];

(ii) *an employee serving under an appointment with a definite time limitation, except one so appointed for full-time employment without a break in service of more than 3 days following service under an appointment without time limitation;*

(iii) [certain aliens];

(iv) [retirement eligible employees and military retirees];

(v) [disability payees];

(vi) [recipients of other government severance pay];

(vii) [TVA employees]; or

(viii) *such other employee as may be excluded by regulations of the President or such other officer or agency as he may designate.*

(b) Under regulations prescribed by the President or such officer or agency as he may designate, an employee who—

(1) has been employed currently for a continuous period of at least 12 months; and

(2) is involuntarily separated from the service, not by removal for cause on charges of misconduct, delinquency, or inefficiency; is entitled to be paid severance pay in regular pay periods by the agency from which separated. [Emphasis added.]

■ The parties agree that plaintiff was an employee as defined in subsection (a)(2)(ii) because she did not have a break in service of more than three days between the end of her employment in the competitive service and her appointment to the term position. But defendant says that a long-standing OPM regulation promulgated under authority of the statute, 5 C.F.R.

§ 550.704(b)(4)(i),* requires that for plaintiff to be eligible for severance pay the termination of her tenured competitive service appointment must have been involuntary. Because she voluntarily relinquished it to accept the term appointment she is prohibited from receiving the payment, even if her ultimate separation was involuntary.

■ The court concurs in the proposition that the long-standing consistent interpretation of a statute manifested by regulations promulgated by the agency charged with implementing it is due significant deference. *United States v. Clark,* 454 U.S. 555, 565, 102 S.Ct. 805, 811, 70 L.Ed.2d 768 (1982). But this axiom is tempered by the admonition that a regulation which is clearly incompatible with the statute under which it was ostensibly promulgated must give way. *See Bureau of Alcohol, Tobacco & Firearms v. FLRA,* —— U.S. ——, ——, 104 S.Ct. 439, 444, 78 L.Ed.2d 195 (1983); *Dixon v. United States,* 381 U.S. 68, 74, 85 S.Ct. 1301, 1305, 14 L.Ed.2d 223 (1965); *Hampton Roads Industrial Electronics Corp. v. United States,* 147 Ct.Cl. 635, 641, 178 F.Supp. 474, 477 (1959). This regulation is facially inconsistent with the statute. It takes away what Congress clearly gave.

■ This should be the end of the inquiry. *See United States v. Clark,* 454 U.S. at 560, 102 S.Ct. at 809; *Consumer Product Safety Commission v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980). But courts should not lightly strike a regulation and should consider any reasonable basis on which it might be sustained. *See Mourning v. Family Publications Service, Inc.,* 411 U.S. 356, 369, 93 S.Ct. 1652, 1660, 36 L.Ed.2d 318 (1973). Defendant cites two provisions which give the agency authority to issue regulations and argues they should be generously construed. *See id.* The first is subsection (a)(2)(viii),

which authorizes the agency to exclude "other" employees. The difficulty with this proposition is that that subsection is parallel to the one which specifically includes plaintiff. Congress clearly considered employees in her circumstance and specifically included them in the definition of employee. The catchall provision authorizing excluding regulations was intended to cover situations other than those Congress had anticipated, not to permit the agency to amend the statute.

Defendant relies on *Akins v. United States,* 194 Ct.Cl. 477, 439 F.2d 175 (1971), as confirming OPM's authority to disqualify employees in plaintiff's circumstance. In that case, employees of a temporary federal agency, the National Capital Transportation Agency (NCTA), were offered employment with a successor nonfederal agency, the Washington Metropolitan Area Transit Authority, when NCTA was abolished. The plaintiff employees all accepted the offer and joined the new agency without missing a day of work, at the same grade and at the same or higher pay. Before NCTA was abolished, the employees had been told they would be entitled to severance pay under section 5595. However, a few days before the operative date, OPM's predecessor, the Civil Service Commission, issued a regulation, now found at 5 C.F.R. § 550.701(b)(5), which specifically precluded the employees from receiving severance pay.

Relying on the section 5595(a)(2)(viii) provision authorizing regulations excluding other employees, the Court of Claims held that the situation of the employees in *Akins* was precisely the type of unforeseeable situation Congress contemplated when by that provision it gave the agency broad discretion to implement exclusionary regulations. 194 Ct.Cl. at 485, 439 F.2d at 178. Our plaintiff's situation is the converse of that one. It was clearly foreseen and specifically addressed by Congress in the statute.

---

* This regulation provides:
> For entitlement to severance pay under section 5595(a)(2)(ii) of title 5, United States Code, the appointment without time limitation must be one of the appointments specified in § 550.701(b)(1) [defining covered reg-

ular employees] and the termination from that appointment must have resulted from an involuntary separation not by removal for cause on charges of misconduct, delinquency, or inefficiency.

*Akins* also cautioned that "[t]he court must be guided by the provisions of the whole law, its object and policy, and the purpose clearly manifested by Congress .... A statute cannot be divorced from the circumstances existing at the time it was passed or from the evil which Congress sought to correct and prevent." 194 Ct.Cl. at 483, 439 F.2d at 177. Therefore, the court canvassed the circumstances existing when the Federal Employees Salary Act of 1965, Pub.L. No. 89–301, 79 Stat. 1111, 1118–20, codified at 5 U.S.C. § 5595, was enacted. Congress was impelled to pass the legislation because a significant contraction of Defense Department activities for economy reasons had left many former federal employees out of work and unable to be absorbed into the work force. It therefore provided severance pay as " 'reasonable compensation to help tide Federal employees over difficult transition periods' when they became separated from Federal service through no fault of their own. H.R.Rep. No. 792, 89th Cong., 1st Sess. 11 (1965) .... [T]he express purpose of the severance pay provisions of the Act was to afford monetary relief to Federal employees who, after long years of faithful public service, 'find themselves out in the cold without work and without retirement,' and with the complete loss of earned employee rights. 111 Cong.Rec. 25677 (1965) ...." 194 Ct.Cl. at 484, 439 F.2d at 178.

The situation prevailing in *Akins* was not what the Act was intended to redress. Those employees were not put out of work by the abolition of their agency, but were immediately reemployed under circumstances at least as favorable as they enjoyed in federal service. Plaintiff Sullivan, on the other hand, falls squarely within the embrace of the congressional purpose in passing the legislation. While the immediate impetus for the Act was the sudden and widespread dismissal of Defense Department employees, the legislation has been made permanent and of general applicability to other employees who suffer the same fate. With more than 15 years of federal service, plaintiff is precisely the type employee whose hardship Congress hoped it

was ameliorating. Therefore, this·exercise of OPM's concededly broad discretion to exclude other employees from coverage was improper.

Defendant's reliance on the agency's authority to issue regulations under section 5595(b) is similarly unavailing. If, as the court holds, OPM cannot exclude plaintiff under the specific provision authorizing its exclusionary regulations, it may not accomplish the same end under this more generalized grant of authority. It is intended to permit development of regulations governing the administration of the program, not as redundant authority to define eligibility.

■ It is difficult to see how Congress could have been clearer in stating its intention by section 5595(a)(2)(ii). When it legislates vaguely or gives discretion to the executive to administratively address unanticipated events, there may be room for judicial or administrative interpretation. But when Congress clearly articulates its policy in a statute, executive agencies may not substitute their judgment, even if, as here, other parts of the same statute permit policy-directed regulations. *See United States v. Clark,* 454 U.S. at 560, 102 S.Ct. at 809; *Morton v. Ruiz,* 415 U.S. 199, 232, 94 S.Ct. 1055, 1073, 39 L.Ed.2d 270 (1974). This is not to say that the policy reflected in the regulations is unreasonable, only that Congress has already spoken, and only Congress can change it. *See Tennessee Valley Authority v. Hill,* 437 U.S. 153, 194, 98 S.Ct. 2279, 2301, 57 L.Ed.2d 117 (1978). With the substitution of but a few words, Congress could have accomplished what the regulation purports to require. But the agency may not do the same thing by drawing hidden distinctions in the guise of interpretation.

*Voluntariness*

■ The other question is whether plaintiff's separation was involuntary and "not for cause on charges of misconduct, delinquency, or inefficiency ..." as required by section 5595(b)(2). That section is intended to be given a generous construction, *see*

*Spring v. United States,* 492 F.2d 1053, 1054 (4th Cir.1974), but neither the statute nor the regulations define "involuntary separation."

Defendant does not attempt to define it either but cites a statement by OPM that "[s]everance pay was not designed to aid an employee serving in a position with a definite time limitation because his eventual separation is not unexpected and he should therefore be prepared for that certainty." Federal Personnel Manual Supplement 990–2, book 550, § S7–3(c)(vii). Defendant says, "A term employee has no legal (or, even, logical) expectation of continuing employment and knows (s)he will face unemployment at the end of that term. An employee who resigns voluntarily [to accept a term appointment] chooses to place him/herself in a position facing unemployment and thus merits no exceptional relief." These are conclusory statements of policy which do not aid in the voluntariness determination. They amount to a presumption that one who leaves the security of a tenured position for another with a stated expiration date thereby manifests willingness to depart upon its expiration. Defendant also fears that inquiring into voluntariness will give rise to difficulties of determination because of the subjectiveness of reasons why employees leave federal service. But similar determinations are frequently required in the management of federal personnel and this concern is not well founded.

Defendant's presumption theory has intuitive appeal and as a general rule might even be true. Almost invariably, federal employees serve by virtue of appointment, not by contract, implied or express, *see Kania v. United States,* 227 Ct.Cl. 458, 465, 650 F.2d 264, 268 (1981); *see also United States v. Hopkins,* 427 U.S. 123, 126, 96 S.Ct. 2508, 2510, 49 L.Ed.2d 361 (1976), and term appointees know from the start they have no right to their positions beyond the period stated. However, this does not establish that when our plaintiff was asked to leave she did so voluntarily.

In the absence of a definition of "involuntary separation" in this context, it is in-structive to note OPM's administrative definition in the related area of civil service retirement eligibility. Federal Personnel Manual Supplement 831–1, § S11–2a says:

> The term *involuntary separation* means any separation against the will and without the consent of the employee, other than separation for cause on charges of misconduct or delinquency .... Note, however, that whether a separation is involuntary depends upon all the facts in a particular case; it is the true substance of the action which governs rather than the methods followed or the terminology used.

Happily, that definition also accords with the common understanding of the words. *See Addison v. Holly Hill Fruit Products, Inc.,* 322 U.S. 607, 618, 64 S.Ct. 1215, 1221, 88 L.Ed. 1488 (1944). In section 11–2k, the same manual says, "Normally, a separation resulting from expiration of the period for which a temporary or other time-limited appointment was made is involuntary for retirement purposes. However, if the employee resigns in advance of the appointment's expiration date, his or her separation is considered voluntary." This, too, is logical. So the question of voluntariness in that context, and there is no reason why the same should not be true here, resolves into a question of fact, as was confirmed by the Court of Claims in *Patterson v. United States,* 193 Ct.Cl. 750, 436 F.2d 438 (1971).

Whatever may be the situation in the normal case, this record clearly refutes any suggestion that plaintiff's separation was other than against her will and without her consent. OPM's administrative guidelines would confirm as much were plaintiff seeking retirement benefits, for which she is not now eligible. Neither statute nor logic require that "involuntary separation" be defined otherwise for purposes of severance pay. Furthermore, plaintiff swears without contradiction, *see* RUSCC 56(e), that her separation from federal service was involuntary. She says, and is corroborated by the official who hired her in 1974, that she transferred upon the representation and assurance that notwithstanding

the documentary facade of a limited term appointment she could expect her appointment to be renewed as long as her performance was satisfactory, there was continued need for her job function and adequate agency funding existed. She was, therefore, hired on essentially the same basis as a permanent civil service employee. NIE had authority to hire exempt from civil service requirements and it was its policy to hire employees for excepted service appointments with the mutual understanding that at the end of their terms their appointments normally would be renewed, absent the occurrence of one of the stated contingencies. Indeed, until 1982 plaintiff's term appointments were routinely renewed upon their expiration, a period of more than eight years.

Defendant attempts to refute this statement of policy with a 1980 memorandum sent to plaintiff by a higher agency official stating that there were no plans to extend the appointment under which she was then serving. The memorandum said, "The general practice of the Institute has been not to extend excepted staff beyond six years . . . ." For all that appears on the record, however, that practice was honored more in the breach than in the observance. Plaintiff was extended twice more after she received it, and at least eight other employees still at the agency have had their time-limited appointments routinely renewed for nine years or more.

This is not to say that plaintiff had or has now any right to her position, or that any violation of procedural due process occurred. She prudently disavows those notions. All this evidence is intended to show, and all the court concludes it does show, is that she never manifested any willingness or consent to leave upon the expiration of any of her appointments.

Plaintiff can be deemed to have agreed that the agency might dismiss her if her performance was not satisfactory, adequate funding was not available, or there was no further need for her job function, the latter eventuality being the one invoked. But those occurrences would also justify separation of a tenured employee. It is not suggested that permanent employees removed because of, for example, reductions in force for lack of funding or change of mission are ineligible for severance pay because they knew of the possible termination of their employment for those reasons when they signed on. Plaintiff in this unique case stands in no different stead than they because of the assurances given by the official who hired her, confirmed by stated and demonstrated policy. If this policy was irregular, which neither party asserts, plaintiff had no role in it, and nothing suggests that she knew or should have known of its irregularity.

### CONCLUSION

Accordingly, plaintiff's motion for summary judgment is granted and defendant's motion to dismiss is denied. Judgment will be entered for plaintiff in the amount of $19,622.89. She shall also have her costs. *See* 28 U.S.C. § 2412(a); RUSCC 54(d).

It is so ORDERED.