**Major Carl J. SAMMT, RA**

v.

**The UNITED STATES.**

**No. 393–83C.**

United States Claims Court.

Jan. 17, 1985.

Keith A. Rosenberg, Washington, D.C., for plaintiff. Meyer, Faller & Weisman, Washington, D.C., of counsel.

R. Anthony McCann, Washington, D.C., with whom was Acting Asst. Atty. Gen., Richard K. Willard, Washington, D.C., for defendant. Major Wayne H. Price, Dept. of the Army, Washington, D.C., of counsel.

## OPINION

LYDON, Judge:

This military pay case comes before the court on motions for summary judgment, both parties claiming there are no material issues of fact in dispute and each claiming entitlement to judgment as a matter of law. The issue, as framed by plaintiff, is whether or not he is entitled to back pay from October 31, 1977, the date he was retired from the Army, until the date of judgment herein, based upon his contention that his twice nonselection for promotion to the grade of lieutenant colonel was invalid due

to the fact that his personnel file contained erroneous material at the time he was considered for promotion. In support of its summary judgment motion, defendant contends that the court lacks jurisdiction over this claim; but if jurisdiction is found to exist, defendant argues, plaintiff's claim should either be denied as a matter of law or barred by the equitable doctrine of laches. After careful consideration of the submissions of the parties, and following oral argument, the court concludes that it does have jurisdiction, and that plaintiff's cross-motion for summary judgment should be denied and defendant's motion for summary judgment granted.

## I.

### Facts

Plaintiff began his military career on July 30, 1954, when he was commissioned a second lieutenant in the Army of the United States (AUS) as a Reserve officer after successfully completing the Reserve Officer Training Course at Kent State University. He commenced active duty on October 10, 1954. Plaintiff was subsequently promoted to the grade of first lieutenant, AUS, on April 10, 1956, and then to captain, AUS, on November 8, 1960.

On May 6, 1959, plaintiff was integrated into the Regular Army (RA) as a first lieutenant with a date of rank of October 10, 1957. He was promoted to captain, RA, on October 10, 1961. Plaintiff was considered, but not selected for promotion to the grade of major, AUS, by promotion boards which adjourned in May 1965, March 1966, May 1967, January 1968, and August 1968. He was also considered twice for promotion to the grade of major, RA, by promotion boards which adjourned

in March 1968 and February 1969. Both times plaintiff was not selected for promotion. As a consequence of his second non-selection for promotion to major, RA, plaintiff was advised, pursuant to 10 U.S.C. § 3303(d), that he would be honorably discharged from active duty on October 1, 1969.

On June 16, 1969, plaintiff requested that he be discharged from the United States Army effective August 15, 1969. However, in order to continue his military career, plaintiff, on August 1, 1969, requested that he be appointed as a reserve chief warrant officer effective October 1, 1969. This request was approved and plaintiff continued on active duty without a break in service as a chief warrant officer.

On November 26, 1969, plaintiff submitted an appeal of four Officer Efficiency Reports (OERs), which he had received, to the Deputy Chief of Staff for Personnel (DCSPER). These four OERs covered the following periods: June 26, 1961, to January 31, 1962; February 1, 1962, to June 6, 1962; July 23, 1963, to January 12, 1964; and July 2, 1967, to July 1, 1968. Plaintiff also filed an application with the Army Board for Correction of Military Records (ABCMR) wherein he requested reinstatement as a commissioned officer and promotion to major based on his appeal of the four OERs. The ABCMR delayed consideration of plaintiff's application pending the decision of the DCSPER.

On March 16, 1970, the DCSPER approved the recommendations of the DCSPER Special Review Board pertaining to plaintiff's appeal of the four OERs. Those recommendations did not order that the OERs be withdrawn. However, it was recommended that one OER be altered.[1]

---

**1.** The recommendations in pertinent part stated:

"a. The evidence does not justify withdrawing or altering the contested efficiency reports on CW2 Sammt for the periods 26 June 1961 to 31 January 1962, 1 February 1963 to 6 June 1963, 23 July 1963 to 12 January 1964, and 2 July 1967 to 1 July 1968.

"b. Certain portions of the rater's and indorser's comments in the report of 1 February 1962 to 4 June 1962 be deleted.

"(1) Delete in its entirety the first sentence of the rater's comments which read * * * 'Captain Sammt's performance of duty as Division Food Advisor has been more acceptable than his performance as a troop leader.'

"(2) Delete in its entirety the second sentence of the indorser's comments which read * * * 'He did better in the job Division Food Advisor than he did previously as Company Commander

Plaintiff's OER was subsequently corrected in accordance with the decision of the DCSPER and plaintiff was notified of this correction. The DCSPER also determined that the corrections made to the OER constituted a "material change" in plaintiff's records and his file was referred to a Standby Advisory Board for promotion reconsideration.

Plaintiff's file, as corrected, was sent to the Secretariat for the Department of the Army Selection Boards to render an advisory opinion as to whether plaintiff would have been promoted had his OER been accurate. On October 1, 1970, the Standby Advisory Board found that the plaintiff was not fully qualified or recommended for promotion to the grade of major, RA in March 1968, or for major, AUS, in May 1965, March 1966, May 1967 or January 1968. However, the Advisory Board did find plaintiff best qualified and recommended for promotion to the grade of major, RA, in February 1969 and major, AUS, in August 1968. The Secretary of the Army approved the recommendations of the Standby Advisory Board on October 17, 1970.

After receiving this information from DCSPER, the ABCMR recommended that plaintiff's records be corrected to show (1) that his honorable discharge from his commission as captain was, and is, null and void; (2) that his appointment as chief warrant officer was, and is, null and void; and (3) that he was promoted to the grade of major, AUS and RA, on October 10, 1968, and October 10, 1969, respectively. These recommendations were adopted by the Under Secretary of the Army on February 23, 1971. Plaintiff was retroactively restored to active status and resumed his duties in the grade of major, AUS and RA.

On March 15, 1971, plaintiff filed a new application with the ABCMR requesting that the same four OERs be withdrawn from his file and a fifth OER, dating back prior to his second nonselection to major,

of the 426th Supply and Transportation Company.' "

RA, in February 1969, be modified. Plaintiff based this request solely on the evidence currently on file with the ABCMR. This application for correction of military records was denied on April 5, 1972, without a hearing.

In 1974, plaintiff was erroneously considered but not selected for promotion to the grade of lieutenant colonel, RA.[2] The error was detected and plaintiff was notified of it. A memorandum was placed in his file which noted the error and directed that it be disregarded.

The RA Selection Board which adjourned December 16, 1975, considered plaintiff for promotion to lieutenant colonel for the first time. He was not selected for promotion. Plaintiff was likewise not selected for promotion by the 1976 promotion Board. Due to the fact that this was plaintiff's second nonselection for promotion to lieutenant colonel, he received a letter on June 10, 1977, from the Department of the Army which stated in pertinent part:

1. Department of the Army, Regular Army promotion selection board recently convened to consider majors for permanent promotion to lieutenant colonel. You were among those officers considered; however, the board did not recommend your promotion. This is your second nonselection and in accordance with paragraph 4–27a(1), AR 635–100 your name must be placed on the inactive list of the Regular Army. Accordingly, you must be placed on the retired list effective 1 December 1977, unless voluntary retirement is requested.

2. Paragraph 4–10, AR 635–100 permits you to request voluntary retirement on the same effective date (1 December 1977) as your mandatory date, if desired. If you elect to retire voluntarily on or before your mandatory date, your voluntary application should be prepared in accordance with Section II, Chapter 4, AR 645–100, and submitted to arrive at

2. He was erroneously "considered because [his] date of rank and basic date was recorded incorrectly on the Officer Master File."

this headquarters, ATTN: DAPC–MSS–RS, 60 days prior to your requested retirement date. If you decide not to apply for voluntary retirement, you should forward your preretirement information in accordance with paragraph 4–23, AR 635–100 by 1 September 1977. Early arrival of your voluntary application or your preretirement information, as appropriate, will be to your advantage since it will permit timely issuance of your orders.

Plaintiff responded on July 11, 1977, with a request that he "be relieved from active duty and assignment on 31 October 1977, and placed on the retired list on 1 November 1977 or as soon thereafter as practicable. I will have completed over 23 years of active Federal service on the requested date. I plan terminal leave on 8 August 1977." This request was granted and plaintiff was retired on October 31, 1977, under authority of paragraph 4–14, Army Regulation 635–100, and 10 U.S.C. § 3911 (1976).

Plaintiff filed this action in this court on June 16, 1983. In his complaint plaintiff alleges that his military records were in material error because:

(a) OERs for the period October 10, 1969 to January 10, 1971 show the Plaintiff's service as a Warrant Officer.

(b) An OER for the period January 12, 1969 to September 30, 1969 reflects that the Plaintiff resigned his commission, but does not provide any additional information regarding his status;

(c) Plaintiff's entire appeal information is contained subsequent to the February 1, 1962 to June 4, 1962 OER.

(d) Plaintiff's award of the Meritorious Service Medal as a Chief Warrant Officer was not changed although amended by pencil notation dated April 2, 1974 to reflect the award in the grade of Major.

(e) There is a reference in the Plaintiff's records that he had been erroneously considered for promotion to the grade of Lieutenant Colonel, RA, by a selection board that convened on November 5, 1974 and that the individuals reviewing his file should disregard the board stamp.

Plaintiff contends that the above erroneous information contained in his records was reviewed by the lieutenant colonel, AUS, Selection Boards and the 1975 and 1976 lieutenant colonel, RA, Selection Boards. Plaintiff claims that his nonselection, based in part on the review of such erroneous information, was unjust. Therefore, plaintiff maintains his release from active duty on October 31, 1977, by reason of his twice nonselection for promotion to lieutenant colonel was and is void and illegal in that his nonselection can be attributed, in part, to the consideration by the Selection Boards of erroneous material in his records.

Based on these allegations, plaintiff requests that the court enter judgment against defendant for the active duty pay and allowances of an officer serving in the grade of major, RA, from October 31, 1977, to the date of judgment. The plaintiff also requests the court to order the Secretary of the Army to correct plaintiff's records by removing all references to his nonselections for promotion to the grade of lieutenant colonel from his records as well as expunging any references to his service as a warrant officer.

## II.

### Jurisdiction

■ Defendant contends that this court lacks jurisdiction in this case. It bases this contention on the fact that, after plaintiff was passed over twice for promotion to the grade of lieutenant colonel, plaintiff requested voluntary retirement. Such an option was offered to plaintiff in the letter he received from the Department of the Army on June 10, 1977. The letter stated "Paragraph 4–10, AR 635–100 permits you to request voluntary retirement on the same effective date (1 December 1977) as your mandatory date, if desired." Plaintiff accepted this option and requested voluntary retirement in his July 11, 1977, response to the Army's letter mentioned above.

Defendant claims that plaintiff's voluntary retirement precludes the court from asserting jurisdiction to grant plaintiff restoration to active duty status and to award him back pay. In support of its argument, defendant cites a number of civilian pay cases. *Brown v. United States*, 2 Cl.Ct. 586 (1983), *aff'd* 732 F.2d 167 (Fed.Cir. 1984); *Parker v. United States*, 230 Ct.Cl. 974 (1982); *Kestner v. Department of the Interior*, 229 Ct.Cl. 772 (1982); *Clark v. United States*, 229 Ct.Cl. 570, 573 (1981); *Taylor v. United States*, 219 Ct.Cl. 86, 591 F.2d 688 (1979).[3] In these civilian pay cases, the Court of Claims and this court have held that jurisdiction is lacking to grant back pay and reinstatement to one who voluntarily terminated his federal employment by resignation or retirement. However, if the resignation or retirement is deemed involuntary, these cases concede that this court does have jurisdiction under the circumstances. The issue as presented by defendant in this case, as a result of this contention, is whether plaintiff's retirement on October 31, 1977, was voluntary or involuntary.

Plaintiff contends that the court does have subject matter jurisdiction in this case. However, he does not claim that his retirement request was involuntary or made under duress. Instead, he contends that "a sharp distinction must be drawn between Plaintiff's retirement and civilian pay cases." However, plaintiff provides little support for his argument. On the other hand, defendant provided absolutely nothing to support its application of the holdings in civilian pay cases to this military pay case. In total, the court has been provided with no meaningful arguments by either party on this very difficult jurisdictional question.

After reviewing pertinent statutory provisions, the court concludes that it does have jurisdiction to hear plaintiff's claim. The applicable statute, 10 U.S.C. § 3303(d)(1976), mandated that an officer who is twice not selected for promotion to the next highest grade must retire if eligible for retirement or be honorably discharged. 10 U.S.C. § 3913 (1976) declared that an officer with 20 years of service shall be retired if not promoted under section 3303(c). Plaintiff had over 23 years of experience. Therefore, section 3303(d)(1) *mandated* that plaintiff be retired.

The fact that an Army Regulation, Paragraph 4–10, AR 635–100 gave plaintiff the option to request voluntary retirement did not and could not alter the fact that plaintiff's retirement pursuant to sections 3303(d) and 3913 was mandatory.[4] To the extent that the Army Regulation may have been inconsistent with sections 3303(d) and 3913, it would have to be ruled invalid. *See Dixon v. United States*, 381 U.S. 68, 74, 85 S.Ct. 1301, 1305, 14 L.Ed.2d 223 (1965); *Welsh v. United States*, 2 Cl.Ct. 417, 420 (1983); *First Federal Savings and Loan Assoc. of Bristol v. United States*, 228 Ct.Cl. 569, 575, 660 F.2d 767, 770 (1981); *Hampton Roads Industrial Electronics Corp. v. United States*, 147 Ct.Cl. 635, 641, 178 F.Supp. 474, 477 (1959). Therefore, despite its characterization, plaintiff's retirement under the circumstances must be deemed involuntary in that it was mandated by 10 U.S.C. § 3303(d)(1976). Given this conclusion, the court does have jurisdiction over this case. *See Rogers v. United States*, 59 Ct.Cl. 464 (1924), *aff'd*, 270 U.S. 154, 46 S.Ct. 275, 70 L.Ed. 520 (1926).[5]

---

3. Defendant also cites *Hanes v. Pace*, 203 F.2d 225 (D.C.Cir.1953), a military pay case, in this regard. However, that case is inapposite because it does not involve the basis for denial of jurisdiction that defendant urges in this case. (203 F.2d at 228). Further, in *Hanes v. Pace, supra*, the voluntary retirement and attendant circumstances were materially different than the statutorily mandated retirement in the case at bar.

4. The court has reviewed Paragraph 4–10, AR 635–100 and is unable to determine how the option of requesting voluntary retirement alters the mandatory nature of the retirement in question.

5. The court feels that 10 U.S.C. § 632(b) (1982) supports this conclusion. Section 632(b) declares retirement, precipitated by failing to be selected twice for a promotion to a higher grade is considered involuntary. The court recognizes that section 632(b) was not in effect in 1977.

## III.

### *Merits*

Plaintiff's primary contention is that material errors in his file resulted in his nonselection for promotion to the grade of lieutenant colonel. Plaintiff maintains that the Army failed to correct his records in accordance with the ABCMR's February 10, 1971, recommendations which were approved by the Secretary of the Army on February 23, 1971. Plaintiff argues that this failure to correct his records in the manner that he felt was directed combined with other errors in his personnel file resulted in his nonselection for promotion which constitutes legal error. Defendant on the other hand argues that the inclusion of the material at issue in plaintiff's records does not constitute error or is at most harmless error in that even in the absence of such alleged erroneous material plaintiff would have failed to be promoted and thus no legal error exists. *See Hary v. United States*, 223 Ct.Cl. 10, 618 F.2d 704 (1980). *See also Horn v. United States*, 223 Ct.Cl. 667, 650 F.2d 286 (1980).

■ Plaintiff's first contention is that the Army failed to correct his personnel file as directed by the ABCMR's February 10, 1971, recommendations. Those recommendations stated:

That all of the Department of the Army records of Carl J. Sammt [plaintiff] be corrected to show:

a. that his honorable discharge from his commissions as Captain, Regular Army and Army of the United States, effective 30 September 1969, was, and is, null and void and of no force or effect;

b. that this appointment as a chief warrant officer (W–2), United States Army Reserve, effective 1 October 1969

was, and is, null and void and of no force or effect; and

c. that he was promoted to the grade of major, Army of the United States and Regular Army, on 10 October 1968 and 10 October 1969, respectively.

Apparently, plaintiff reads this recommendation as directing that any references to his discharge from his captain's commission and his service as a warrant officer be completely expunged from his record and replaced with references to service as a major for the same time period.

The court, however, does not read this recommendation in that manner. The court finds it reasonable to conclude that notations in his record rendering his discharge and service as a warrant officer null and void, while noting his promotion to major on the proper dates, would fully carry out the recommendations of the ABCMR and the directive of the Under Secretary of the Army, without more. Such notations would provide the necessary explanation as to what actually transpired over the period from September 30, 1969, until February 23, 1971, while clarifying plaintiff's legal status. The correction desired by plaintiff would cause his record to reflect that he received two OERs and a Meritorious Service Medal as a major when in fact he received them as a warrant officer. Such a correction would not accurately reflect plaintiff's service experience. If the OERs and the medal received by plaintiff as a warrant officer were also expunged from his record, along with all references to his service as a warrant officer, then a large gap in his OERs, while legally serving as a major, would appear in his file. Such a gap in OERs is considered error. *See Yee v. United States*, 206 Ct.Cl. 388, 396, 512 F.2d 1383, 1386 (1975).

---

However, it is the opinion of the court that section 632(b) spells out what Congress had previously intended but had failed to express in *heac verba* in 10 U.S.C. § 3303(d) (1976).

Given the fact that both 10 U.S.C. § 3303 (1976) and 10 U.S.C. § 632 (1982) deal only with Regular Army officers and the fact that plaintiff in this case was a Regular Army officer, the

court restricts its jurisdictional ruling to such officers. The court expresses no opinion concerning its jurisdiction to hear similar cases involving Reservists. There may be a distinction between the treatment of Reserve and Regular Army officers which may impact on the court's jurisdiction. *See e.g., Hodakievic v. United States*, 6 Cl.Ct. 499, 500–01 (1984).

It can be reasonably assumed that the recommendations of the ABCMR as interpreted by the court were implemented.[6] As a result, plaintiff's file would reflect that his discharge from his captain's commission was null and void as was his service as a warrant officer. Plaintiff's record would also indicate that he was promoted to major, AUS, on October 10, 1968, and major, RA on October 10, 1969. Such notations would provide a selection board with an accurate reflection of plaintiff's service history. Additionally, it is presumed that the Army officers on the selection boards disregard any information not properly before them, thus presumptively negating any possible prejudice from the voided discharge and service as a warrant officer. *See Bockoven v. Marsh*, 727 F.2d 1558, 1563 (Fed.Cir.1984). Therefore, the court concludes that the Army's failure to completely expunge all references to plaintiff's discharge in 1969 and his service as a warrant officer was unnecessary and did not constitute legal error.

■ Looking specifically at the errors which plaintiff alleges still exist in his record the court concludes that they constitute at most harmless error. First, plaintiff contends that error exists in that his OERs for the period October 10, 1969, to January 10, 1971, refer to plaintiff's service as a warrant officer. As the court stated earlier, if all references to his service as a warrant officer were deleted, a gap would exist in his record which is impermissible. *See Yee v. United States, supra,* 206 Ct.Cl. at 396, 512 F.2d at 1386–87. If all references to his service as a warrant officer were changed to indicate he served during that time period as a major, plaintiff's file would be factually inaccurate in that it would reflect that he received two highly favorable OERs and a Meritorious Service Medal as a major when in fact he did not.

Additionally, as stated above, officers on the selection board would be presumed in this case to disregard the fact that plaintiff received the favorable OERs and the medal as a warrant officer, due to his warrant officer service being rendered null and void. Instead, the selection board would simply focus on the fact that he received the positive reports and award. In fact, in both the March 25, 1975, and April 13, 1976, letters of instruction to selection board members the selection officers were instructed as follows:

> The determination of an officer's potential will be based for the most part, on the record of performance and aptitude in both his/her primary and alternative specialties and finally by considering the overall duty performance. *The board will focus on the proficiency of performance and not be unduly influenced by diversity of assignments or the level at which duties are performed.*

This instruction indicates to the court that plaintiff's favorable OERs and Meritorious Service Medal, combined with the selection board's knowledge of plaintiff's improper discharge in 1969, would only serve to aid plaintiff's promotion chances and not hinder them.

Finally, both *Yee v. United States, supra,* 206 Ct.Cl. at 396, 512 F.2d 1386–87 and *Sanders v. United States,* 219 Ct.Cl. 285, 309–15, 594 F.2d 804, 817–20 (1979) recognize that an error in a personnel file can be rendered harmless by an explanation of its existence in the file. In this case, the corrections directed by the ABCMR on February 10, 1971, can be said to at least partially explain the existence of the warrant officer references in plaintiff's OERs. In addition, plaintiff provided his own more complete explanation for the warrant officer references in his June 17, 1974, letter to the Secretariat for the Department of the Army Selection Boards.[7]

---

**6.** In fact, plaintiff admits in his complaint that his records were corrected pursuant to the ABCMR decision. (Complaint paragraph 5.)

**7.** Plaintiff's June 17, 1974, letter reads in pertinent part:

> "My record will reflect both an AUS and RA date of rank of 10 Oct. 68; however, my OER's from 1968 to the present will reflect the following (summary):

Therefore, based upon the above reasons the court concludes that the references in plaintiff's OERs to his service as a warrant officer are at most harmless error and provide no basis for overturning his nonselections to the grade of lieutenant colonel.

The second alleged error in his record cited by plaintiff is that his OER for the period January 12, 1969, to September 30, 1969, reflects that he resigned his commission as a captain, but does not provide any additional information regarding his status. This alleged error was fully explained by the corrections recommended by the ABCMR and by plaintiff's June 17, 1974, letter explaining his service record. Therefore, based on *Yee v. United States, supra,* 206 Ct.Cl. at 396, 512 F.2d at 1386–87 and *Sanders v. United States, supra,* 219 Ct.Cl. at 309–15, 594 F.2d at 817–20, the requisite explanation was provided and the error, if such it be, must be considered harmless.

 The third potential error pointed out by plaintiff is that plaintiff's entire

| PERIOD | AUTH GRADE | ACTUAL GRADE | OER's |
|--------|-----------|--------------|-------|
| 20 Jan 71–18 Jan 74 | MAJ | MAJ | 4 |
| *1 Oct 69–10 Jan 71 | LT/WO | CWO | 2 |
| 2 Jul 66–30 Sep 69 | CPT | CPT | · 2 |

"* This will undoubtedly hurt my promotion possibilities unless fully explained (see below).

\* \* \* \* \* \*

"On 30 Sep 69, I was involuntarily released from active duty as a captain. On 1 Oct. 69, I accepted a warrant (CW–2) staying on continuous active duty. I subsequently appealed my release (during which time I was promoted to CW–3) and in May 71 my active duty commission was returned (Army Board of Correction of Military Records and Under Secretary of the Army), with a retroactive date of rank of 10 Oct 68, major, AUS and RA. This should clarify the four OER's listed above for the period 2 July 68—10 Jan. 71. *I am advised that these will be considered for promotion to LTC,* suspect it may not be in my favor, and would hereby like to clarify the situation. I am a firm believer in the guidance that the total-man concept should and will govern.

�½ \* \* \* \* \*

"I am hereby requesting that the selection board consider my promotion possibilities in light of the 'total-man concept' and not penalize me for the 1969–1971 period or prior. *I was crucified in 1969 but the injustice was corrected in 1971;* however, this period of history could (if viewed

appeal package was contained in his file for the period after his February 1, 1962, to June 4, 1962, OER. Again, the court must consider this, at most, harmless error. The instructions given to selection board officers do not include consideration of appeal actions an officer may have undertaken during his career. Quite properly the focus of selection board members is on an officer's past performance and his potential to excel in the future. Selection board members take " 'a special oath to follow strictly the instructions provided the board about the approriate criteria for selection.' " *Bockoven v. Marsh, supra,* 727 F.2d at 1563. Appeals previously taken by an officer up for promotion are not included in the instructions and thus should not be considered. There is a strong presumption that government officials act properly. *See Eagle Constr. Corp. v. United States,* 4 Cl.Ct. 470, 479 (1984); *P. Francini & Co. v. United States,* 2 Cl.Ct. 7, 11 (1983); *Burroughs Corp. v. United States,* 223 Ct.Cl. 53, 64–65, 617 F.2d 590, 597 (1980);

in the wrong way) again conceivably hurt my promotion possibilities and could eventually result in another involuntary release. The Army is my chosen profession and I desire to remain on active duty as long as humanly possible. Promotion pergatory could end it. \* \*₁ \* " (Emphasis added.)

Plaintiff's counsel asserted at oral argument that this 1974 letter should have been removed from plaintiff's file because it was associated with plaintiff's erroneous consideration for promotion to lieutenant colonel in 1974. However, plaintiff's counsel failed to observe that plaintiff included another copy of his June 17, 1974, letter with a letter, dated July 10, 1975, that he submitted to the 1975 selection board. Therefore, even if the June 17, 1974, letter should have been removed from plaintiff's file, plaintiff resubmitted said letter in 1975 making consideration thereof appropriate. Therefore, a detailed explanation of his record was properly before the selection board.

Further explanation of plaintiff's record was provided to the selection board which convened in 1975 by plaintiff's July 10, 1975, letter. In said letter he referred to his discharge from his position as captain in 1969, his warrant officer duty and his appeals of his OERs. Though the 1975 letter was not as detailed as his June 17, 1974, letter, which he included with the 1975 letter, it again provided an explanation of his military record during the 1969–1971 period.

*Sun Oil Co. v. United States,* 215 Ct.Cl. 716, 746, 572 F.2d 786, 805 (1978). Plaintiff has alleged no facts which would overcome this presumption. Based on the required oath and this presumption of appropriate action, the court concludes that the fact that plaintiff's record contained his appeal package is harmless error, if it is error at all.

The fourth alleged error asserted by plaintiff is that his file was not completely amended to indicate that he received his Meritorious Service Medal as a major and not as a warrant officer. Initially, as indicated by the court above in its discussion of the OERs received by plaintiff as a warrant officer, the court questions the propriety of altering plaintiff's record to show that he received the Meritorious Service Medal while serving as a major when in fact he was a warrant officer. Such an alteration would not accurately reflect the reality of plaintiff's military service. In any event, plaintiff admits that the record concerning his medal was amended by pencil notation on April 2, 1974, to reflect receipt of the award in the grade of major. Such a clarification combined with plaintiff's June 17, 1974, explanation of his service record provides a sufficient explanation of any error, if one exists, regarding receipt of the medal to render the error harmless. *See Yee v. United States, supra,* 206 Ct.Cl. at 396, 512 F.2d at 1386–87; *Sanders v. United States, supra,* 219 Ct.Cl. at 309–15, 594 F.2d at 817–20.

The final assertion of error presented by plaintiff is the fact that his record contains reference to his erroneous consideration for promotion to the grade of lieutenant colonel, RA, by a selection board that convened on November 5, 1974. A memorandum was placed in plaintiff's file which reads:

Officer was considered erroneously to LTC, RA, by the Selection Board that adjourned on 5 November 1974 based on an incorrect Basic Date and Date of Rank in the grade of major, RA. Any references to a Board Stamp or any correspondence referring to consideration for promotion to LTC, RA, by the 1974, Board should be disregarded. Officer is eligible for consideration to LTC, RA, for the first time by the 1975 Board.

The court in *Bockoven v. Marsh, supra,* 727 F.2d at 1563 stated that " 'highly trained and disciplined Army officers should be presumed to have followed direct orders to disregard any information not properly before them in making their selection decisions.' " Based on this presumption, the fact that plaintiff's file contained any reference to this erroneous promotion consideration is also at most harmless error which cannot be considered to have prejudiced plaintiff's promotion opportunity.

The court therefore concludes, based upon the above-stated reasons, that the alleged errors cited by plaintiff in his record are at best harmless and that his record portrayed his service career on a " 'fair and equitable basis.' " *Sanders v. United States, supra,* 219 Ct.Cl. at 302, 594 F.2d at 814; *Hary v. United States, supra,* 223 Ct.Cl. at 19, 618 F.2d at 709. The court cannot conclude that the inclusion of material at issue in plaintiff's personnel file rendered it substantially incomplete or inaccurate. *Sanders v. United States, supra,* 219 Ct.Cl. at 310, 594 F.2d at 818. Based on the nature of the errors asserted and/or the explanation which accompanied some of them in plaintiff's file, the court concludes that plaintiff was given fair and just consideration for promotion and his nonselection was proper. *See Yee v. United States, supra,* 206 Ct.Cl. at 396, 512 F.2d at 1386–87. *See also Horn v. United States, supra,* 223 Ct.Cl. at 668–69, 650 F.2d 286; *Hary v. United States, supra,* 223 Ct.Cl. at 19–24, 618 F.2d at 709–12.[8]

---

8. Another argument presented by defendant on the merits focuses on plaintiff's failure to raise the errors in his personnel file, which he is now asserting as the basis of his claim, in his March 15, 1971, application to the ABCMR. Defendant asserts that plaintiff's failure to raise these errors in his March 1971 application precludes him from challenging these errors in this court. *See Doyle v. United States,* 220 Ct.Cl. 285, 311–12, 599 F.2d 984, 1001 (1979).

The only relief requested by plaintiff in his March 1971 application was voidance of the

## IV.

### Laches

Assuming *arguendo* that the errors in his record, as asserted by plaintiff, are not harmless, defendant also argues that plaintiff's extensive delay in bringing his claim before this court bars plaintiff's claim based upon the equitable doctrine of laches. Though plaintiff does not dispute that the delay was extensive, he claims that, (1) his delay in bringing his claim was excusable, and (2) defendant was in no way prejudiced by this delay. Having reviewed the arguments of both parties and applicable case law, the court concludes that plaintiff's delay was inexcusable and defendant was prejudiced thereby and thus plaintiff's claim would also be subject to the laches defense.

■ In *Brundage v. United States*, 205 Ct.Cl. 502, 505–06, 504 F.2d 1382, 1384 (1974), *cert. denied*, 421 U.S. 998, 95 S.Ct. 2395, 44 L.Ed.2d 665 (1975), the court stated: "Laches is a 'fairness' doctrine by which relief is denied to one who has unreasonably and inexcusably delayed in the assertion of a claim. Failure to act promptly will operate as a bar to recovery where the delay results in injury or prejudice to the adverse party." The *Brundage* court accordingly set out the two elements which must exist in order to establish the defense of laches. These elements are: (1) inexcusable delay on the part of the claimant, and (2) prejudice to defendant as a result of such delay. If these two elements are made out, this affirmative defense is available in military pay cases. *See Talley v. United States*, 6 Cl.Ct. 807 (Cl.Ct.1984); *Jones v. United States*, 6 Cl.Ct. 531 (1984);

*Fleming v. United States*, 2 Cl.Ct. 111, 115 (1983); *Brundage v. United States, supra.*

■ The first element of laches is inexcusable delay. Defendant claims that plaintiff's delay in this case is both extensive and inexcusable. On the other hand, plaintiff claims that any delay in bringing his claim to this court is excusable in that he assumed the corrections, as he interpreted them, recommended by the ABCMR in 1971 were made. Apparently, plaintiff also contends that he never reviewed his file to enable him to detect that the corrections had not been made. First, as the court stated earlier, it is of the opinion that the corrections as recommended by the ABCMR were carried out. Second the court finds it untenable that plaintiff did not become aware of the errors in his record as he perceived them until 1982 (a period of almost 12 years).

The crux of plaintiff's claim is that his two nonselections for promotion to lieutenant colonel were invalid due to the fact that his file contained erroneous material which may have prejudiced his promotion chances. It is true that on February 23, 1971, the Under Secretary of the Army approved recommendations by ABCMR which suggested promoting plaintiff to major and rendering plaintiff's honorable discharge as a captain, RA and AUS null and void as well as making his appointment as a chief warrant officer null and void. It is plaintiff's position that these ABCMR recommendations warranted expunging from his record all references to the above discharge and subsequent service as a warrant officer. However, such changes as perceived by plaintiff were not made at the time (February 23, 1971) that these recom-

---

four OERs he had earlier appealed to the DCSPER as well as modification of a fifth OER. Plaintiff did not raise the fact that his file indicated that (1) he received OERs and the Meritorious Service Medal as a warrant officer, (2) the OER he received while a captain stated that he resigned his commission in 1969, and (3) he had appealed several OERs. Plaintiff maintains that he assumed the corrections to his record had been made and, therefore, did not raise such errors in his March 1971 application. However, such a position is somewhat implausible. In

order to seek the voidance of the four OERs in his file it can be assumed that plaintiff must have reviewed his personnel files and was aware, or should have been aware, of the "errors" he is now asserting. Therefore, the rule set out in *Doyle v. United States, supra,* would appear to preclude plaintiff from raising these errors now. However, based on the court's reliance on harmless error and its discussion of the laches defense, *infra,* it does not base its decision on this theory of failure to exhaust administrative remedies.

mendations were approved. Plaintiff contends that the fact that his file contained this erroneous material caused his nonselection and thus he is entitled to back pay as a major, RA, from October 31, 1977 (the date he was retired) to the date of judgment.

As pertaining to the laches defense issue, plaintiff contends that he assumed the corrections had been made in his file and he did not become aware of the errors until 1982. Therefore, plaintiff claims his delay in bringing this action is excusable. The court cannot agree with this position. The facts show that plaintiff challenged five OERs in his file in an application to the ABCMR on March 15, 1971. This action came after the date when plaintiff's records should have been corrected. This March 15, 1971, application demonstrates: (1) that plaintiff knew of his right to challenge the contents in his file, and (2) he must have reviewed his personnel file prior to that application which would have put him on notice that the changes had not been made.

Additionally, on June 17, 1974, plaintiff wrote to the Secretariat for the Department of the Army Selection Boards regarding plaintiff's "forthcoming promotion consideration for lieutenant colonel." *See supra* note 7. This letter clearly demonstrates that plaintiff was fully aware of the contents of his personnel file and that no corrections had been made in his record. At least as early as June 1974, plaintiff was aware that his assumptions concerning corrections being made in his file were inaccurate.

There is an additional ground upon which to find inexcusable delay. "To avoid laches, a litigant must pursue his claim with diligence from the date it accrues." *Jones v. United States, supra,* 6 Cl.Ct. at 532. *See also Brundage v. United States, supra,* 205 Ct.Cl. at 509, 504 F.2d at 1386. In this case plaintiff's claim accrued no later than October 31, 1977, when he was retired from the Army. Plaintiff claims ignorance of the facts necessary to institute his claim. However, "the professed ignorance of the

factual basis of a cause of action does not justify delay in filing suit." *Jones v. United States, supra,* 6 Cl.Ct. at 533. *See also Foster v. United States,* 3 Cl.Ct. 440, 444 (1983), *aff'd,* 733 F.2d 88 (Fed.Cir.1984). Plaintiff had a duty to diligently pursue his claim once it accrued, which was at the latest the end of 1977, by carrying out his affirmative duty to inquire into the facts and acting on the facts discovered. *Jones v. United States, supra,* 6 Cl.Ct. at 533. Therefore, plaintiff has no excuse and a delay of at least 5 years and 8 months is sufficient to adopt the defense of laches. The claims of litigants guilty of far less delay have been barred by laches. *See e.g., Beeny v. United States,* 218 Ct.Cl. 672, 590 F.2d 343 (1978) (delay of over 4 years and 3 months); *McGahey v. United States,* 213 Ct.Cl. 717, 553 F.2d 105 (1977) (delay of 4 years and 10 months); *Gunston v. United States,* 207 Ct.Cl. 1018, 529 F.2d 531 (1975) (delay of over 4 years); *Bell v. United States,* 207 Ct.Cl. 1021 (1975) (delay of over 3 years); *Brundage v. United States, supra,* (delay of over 3 years and 8 months).

Therefore, the court concludes that plaintiff has no excuse for his delay in bringing this claim. Furthermore, plaintiff does not maintain that the delay involved in this case is insufficient to warrant the bar of laches. Instead, he relies solely upon the argument that the delay was excusable.

With respect to the second element of laches, prejudice to defendant resulting from plaintiff's delay, defendant contends that if plaintiff is allowed to recover, the defendant will have to pay for services which were never performed and for benefits which were never received. This is clearly true. This court, and its predecessor court, have found payment to a plaintiff for unrendered work is sufficient to make out prejudice. *See Jones v. United States, supra,* 6 Cl.Ct. at 533–34; *Shafer v. United States,* 1 Cl.Ct. 437, 439 (1983) (court, however, required a weighing of all factors); *Swiger v. United States,* 227 Ct.Cl. 608, 611–12 (1981); *Beeny v. United States, supra,* 218 Ct.Cl. at 673, 590 F.2d

343; *Brundage v. United States, supra,* 205 Ct.Cl. at 510, 504 F.2d at 1386–87.

It is reasonable for the court to assume that another officer performed plaintiff's functions and filled his position after plaintiff was retired. This officer obviously was paid for such services. If plaintiff recovers in this action, defendant would be forced to pay two salaries over a long period of time during which it received services from only one person. This potential for double payment of salaries is sufficient prejudice to defendant to support the enforcement of laches. *See Brundage v. United States, supra,* 205 Ct.Cl. at 510, 504 F.2d at 1386–87.

Finally, defendant also claims it is prejudiced by the "factors which accompany the passage of time, such as loss of memory and destruction of records." This court addressed such a prejudice claim in *Shafer v. United States, supra,* 1 Cl.Ct. at 439. It stated:

> While the court will not presume prejudice merely because of the passage of time, the experience of life and common sense compel the conclusion that memories about an apparently routine administrative chore so long ago will indeed be dim. Plaintiff had a duty of showing that this reasonable conclusion is not true in this case. [*Id.*]

In attempting to address defendant's claim of prejudice due to the passage of time, plaintiff contends that his records are in substantially the same shape that they were in at the time the errors complained of occurred. Assuming this to be the case, plaintiff has failed to utilize available discovery techniques and countervailing affidavits to address defendant's claim that the memories of some of the people involved, *i.e.,* former selection board members, have faded. *See Shafer v. United States, supra,* 1 Cl.Ct. at 439. *See also generally*

*Brundage v. United States, supra,* 205 Ct.Cl. at 510, 504 F.2d at 1387.

Plaintiff attempts to minimize the "double pay" prejudice argument put forth by defendant by asserting that he would have had to retire after 24 years of federal service anyway. The court interprets plaintiff's argument as an attempt to minimize the prejudice asserted by defendant by implying that his back pay claim would only be for the period before his mandatory retirement. However, such an assertion is inconsistent with plaintiff's claim for back pay from October 31, 1977, to the date of judgment in his complaint. Furthermore, the court can find no statutory support for plaintiff's claim that he would have been forced to retire after 24 years of service.[9]

In any event, due to the length of plaintiff's delay, defendant need show only minimal prejudice to invoke the laches doctrine. *See Jones v. United States, supra,* 6 Cl.Ct. at 535; *Deering v. United States,* 223 Ct.Cl. 342, 350, 620 F.2d 242, 246 (1980). In this case, assuming retirement after 24 years, payment to plaintiff of back pay for even the more limited period is sufficient to establish prejudice. The delay by plaintiff in this case was so long that "there is less need to search for specific prejudice and the shift to plaintiff of demonstrating lack of prejudice is greater." *Shafer v. United States, supra,* 1 Cl.Ct. at 439. *See also Deering v. United States, supra,* 223 Ct.Cl. at 350, 620 F.2d at 246; *Brundage v. United States, supra,* 205 Ct.Cl. at 509, 504 F.2d at 1386. The court concludes that defendant has demonstrated sufficient prejudice and plaintiff has produced very little to show a lack thereof.

Consequently, defendant has demonstrated that both elements of the equitable defense of laches exist in this case. Plaintiff waited, at a minimum, almost 6 years to bring his claim to this court and his excuse for such delay is inadequate. Defendant would be prejudiced by the faded memories

---

**9.** Plaintiff failed to cite the pertinent statute. The court has reviewed the statutory provisions on retirement for years of service pertaining to majors and can only find a provision requiring lieutenant colonels to retire after 28 years of service. 10 U.S.C. § 3916 (1976); 10 U.S.C. § 633 (1982). The court was likewise unable to find an applicable Army regulation on the subject.

of witnesses and/or the potential payment to plaintiff of back pay for services never rendered.

## V.

### *Conclusion*

For the reasons set forth above, the court concludes that plaintiff's motion for summary judgment is denied and defendant's motion for summary judgment is granted, with plaintiff's complaint to be dismissed.