Marian L. OLSON, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 294–86C.

United States Claims Court.

April 30, 1987.

Gary Howard Simpson, Washington, D.C., for plaintiff.

Hillary A. Stern, Washington, D.C., with whom was Asst. Atty. Gen. Richard K. Willard, for defendant. Gus Goldberger, Dept. of Energy, and Wade Plunkett, Office of Personnel Management, of counsel.

## OPINION

NETTESHEIM, Judge.

This case comes before the court on cross-motions for summary judgment. Argument has been held.

## FACTS

Marian L. Olson ("plaintiff") appeals a decision of the Director of the Department of Energy (the "DOE") denying her severance pay under the Federal Employee's Salary Act of 1965, 5 U.S.C. § 5595 (1982) (the "FESA"), and a companion regulation, 5 C.F.R. § 550.701(b) (1983).

The facts material to decision are undisputed. Prior to September 30, 1983, plaintiff was employed as Chief of the Planning and Compliance Branch of the DOE's Bartlesville Energy Technology Center ("BETC") and received an annual salary of $53,000. Through a cooperative agreement, the operations of BETC were to be transferred to the privately-owned National Institute for Petroleum and Energy Research ("NIPER"), a subdivision of the Illinois Institute of Technology Research Institute ("IITRI"). The operations were to be converted formally beginning on October 1, 1983. Accordingly, plaintiff's government position was scheduled to be terminated by a reduction-in-work-force order on September 30, 1983.

Five months before the termination, IITRI, by letter of May 9, 1983, formally offered plaintiff the position of Manager in its Program Development Department at a salary of $56,400. Plaintiff had two options under 5 C.F.R. § 550.701(b)(6): 1) to accept the new private position and forego

government severance pay; or 2) to decline the position and (assuming it was not comparable) receive severance pay benefits. Although no job description existed at the time of the offer, plaintiff verbally agreed to accept the position and signed the May 9, 1983 letter so manifesting. In fact, at no time relevant to plaintiff's claim did a written position description exist.

During the five-month transition period, plaintiff attended a number of orientation sessions and, apart from the orientations, had several conversations with officials. For example, on May 6 and 11, 1983, plaintiff and James Deterding, current Vice President and Director of IITRI, Bartlesville Division, held meetings discussing future job duties. Mr. Deterding's notes from the first meeting outline four areas of responsibilities:

> "Program development manager's job consists of developing market plans, interfacing with our corporate director for government marketing, being responsible for public relations, and report and proposal preparation."

The first area of responsibility, developing market plans, included "putting together our [IITRI's] program for contacting industry and government agencies with relation to government contract work." "[I]nterfacing with our corporate director for government marketing," the second duty discussed by Mr. Deterding, involved "develop[ing] mailing lists of potential clients[;] send[ing] out promotional literature; tak[ing] phone calls." These two responsibilities were the predominant work of the new position.

On September 13, 1983, plaintiff participated in an IITRI training session, which focused on the evolving operations of IITRI and her expected role within the organization. Sales and marketing techniques were the principal topics. Thereafter, plaintiff carried on tasks under the flagship of IITRI, such as signing correspondence bearing her job title and new affiliation. An IITRI employee identification number and air travel card also had been assigned to plaintiff on an earlier date.

By letter dated September 23, 1983, plaintiff reported that she would not be joining IITRI because "my training and background are not appropriate...." She expressed regret for the decision "because of the great pleasure it has been to work with you and the members of the IITRI staff over the past several weeks."

Plaintiff had been advised by a notice issued on August 23, 1983, that severance pay would be denied if she accepted the offer of employment with IITRI. Because she ultimately declined employment with IITRI before the transfer of function took place, plaintiff directed her written protest to BETC. Plaintiff emphasized in her protest that she was not compelled to accept the IITRI position in lieu of receiving severance pay because the "fundamental character [of the position] is sales and marketing." On November 10, 1983, DOE affirmed plaintiff's ineligibility for severance pay:

> Your request for reemployment states that in order to be considered comparable employment, "The substance and material functions of the work must be considered...." I have enclosed a copy of Federal Personnel Manual Letter 550-72, Severance Pay; Transfer of Agency Functions to Private Organizations. You will note that it specifically defines "comparable employment" only in terms of pay and benefits, not in terms of the work to be performed. I cannot, therefore, agree that the position offered to you was not "comparable employment" and the previous decision regarding your eligibility for severance pay is affirmed....

Subsequently, plaintiff commenced suit in this court.

## DISCUSSION

The FESA provides compensation to federal employees "for a continuous period of at least 12 months" if "involuntarily separated from the service." 5 U.S.C. § 5595(b)(1), (2). The requirements for entitlement to severance pay appear in 5 C.F.R. §§ 550.701–708 (1983). Plaintiff argues that this case turns on the interpretation of the terms "comparable employ-

ment," as applied in section 550.701(b)(6), which precludes an individual from receiving an entitlement:

> This subpart [providing for severance pay] does not apply to an employee who, as the result of the transfer of the operation and maintenance responsibilities for a Federal project to a private organization, is offered comparable employment with the private organization *or* within 90 days of the date of transfer accepts any employment with the private organization.

(Emphasis added.)

The legislative intent in providing severance pay was to afford monetary relief to federal employees who "after long years of faithful public service, 'find themselves out in the cold without work and without retirement,' and with the complete loss of earned employee rights." *Akins v. United States,* 194 Ct.Cl. 477, 484, 439 F.2d, 175, 178 (1971) (quoting 111 Cong.Rec. 25,677 (1965) (remarks of Rep. Hanley)); *see also Sullivan v. United States,* 4 Cl.Ct. 70, 74 (1983), *aff'd,* 742 F.2d 628 (Fed.Cir.1984).

The Office of Personnel Management (the "OPM") has interpreted the term "comparable employment," as follows:

> For severance pay purposes, 'comparable employment' is employment in which pay and benefits, and the monetary value thereof, are similar enough, after weighing the advantages of the total pay and benefits packages, that the employment offered may be considered substantially equal to the individual's Federal employment. Pay and health benefits, such as leave, paid holidays, health benefits, life insurance and retirement, need not be compared on an individual basis, but should instead be compared as a total pay and benefits package and include such other significant benefits as may be pertinent to the offer. When making a determination of 'comparable employment,' there is no requirement that pay rates or any individual benefit be identical or 'equivalent' to that offered by Federal employment.
>
> . . . .

> An employee is excluded from severance pay benefits if he or she is offered comparable employment with the private organization on or before the date of the transfer of the employee's function to the private organization, whether the employee accepts or declines the offer. An offer of comparable employment may be declined after the date of the transfer without affecting severance pay eligibility. *If, however, the employee is employed in any position (comparable or otherwise) by the private organization within 90 days after the transfer of the employee's function to that organization, the employee is ineligible for severance pay.*

FPM Letter 550–72 (Aug. 21, 1980) (emphasis added).

Plaintiff concedes that the pay and job-related benefits of the IITRI position were substantially similar to those she received as a federal employee. Complaint filed May 9, 1986, ¶ 10. Her refusal to join IITRI centers on the sales and marketing activities involved in the position, including, as defendant described the position in answers to interrogatories, "generating new business, contacting organizations which expressed interest in IITRI's activities ... developing promotional materials and brochures, and supervising the individual who was to be specifically responsible for the marketing and actual selling of IITRI's programs." In her previous position as a program analysis officer, plaintiff neither engaged in nor supervised any sales-related activities.

Relying on the FPM letter and the Court of Claims decision in *Akins,* defendant argues that limiting comparability to pay and benefits has administrative utility, since no two positions can be identical. But, defendant contends, the issue of comparability need not be reached. In *Akins* several former federal employees sought severance pay under 5 C.F.R. § 550.701(b)(5) after the functions of the federal National Capitol Transportation Agency were transferred to a private entity. Section 550.701(b)(5) deals with replacement of a federal organization by a public entity, but is otherwise identical to section 550.701(b)(6). Although each

former federal employee had been offered and accepted employment and currently was employed by the successor public entity, they argued that section 550.701(b)(5) was contrary to the underlying statute, prior regulations, and congressional intent. The court in *Akins* upheld the reasonableness of the regulation, which is dispositive of plaintiff's similar arguments concerning section 550.701(b)(6), and also refused to consider the comparability of the positions because plaintiffs had been offered and accepted employment with the successor entity prior to the date their federal employment terminated:

> The unequivocal language of the challenged regulation denies the payment of severance pay benefits upon the happening of either one of two separate and distinct events. That is to say, severance pay will be denied if any employment with the successor public non-Federal agency is accepted within 90 days of the date of replacement, *or* if a comparable position is offered at the time of replacement and subsequently declined. . . .
>
> . . . .
>
> . . . [T]he question of comparability of job functions and related benefits becomes moot once *any* employment with the successor public non-Federal agency is accepted within the prescribed time period. Only when the offer of employment is declined or accepted after this prescribed period does the issue of comparability become ripe for resolution. . . .

194 Ct.Cl. at 486–87, 439 F.2d at 179 (emphasis in original).[1]

*Akins* governs plaintiff's claim, and her case turns not upon comparability of job functions, but upon her acceptance of the offer of employment. Plaintiff's decision to work for the new private entity until one week before the formally completed transfer puts her within the 90–day period during which she could not accept employment without forfeiting severance pay consistent with section 550.701(b)(6). Although plaintiff accepted the offer on May 9, 1983, approximately 144 days before transfer, she delayed until September 23, 1983, seven days before the formal transfer to take place on October 1, 1983, to withdraw her acceptance. This withdrawal of her prior acceptance falls within the 90–day period before transfer of job functions. At any time before the 90–day period began, plaintiff might have avoided the prohibition of the regulation by withdrawing her acceptance.[2] However, during the 90–day period she had manifested a continuing acceptance and therefore comes within the prohibition of section 550.701(b)(6).

It is important to note that *Akins*, binding precedent on the Claims Court, is almost on all fours with this case. The differences are two. First, the regulation is not the same, but only insofar as the successor entity here is public, not private. Second, plaintiffs in *Akins* actually were employed by the successor public entity after termination of their federal employment, whereas plaintiff in the case at bar left her federal employer before its functions passed to IITRI. Yet, the Court of Claims in *Akins* reached the precise question before this court by interpreting the regulation to deny severance benefits if employment is accepted within 90 days of the date of replacement and by ruling that "[t]here is no dispute that plaintiffs have satisfied this first contingency by accepting employment with . . . [the successor entity] within the prescribed period of 90 days. . . ." 194 Ct.Cl. at 486, 439 F.2d at 179. *Akins* thus governs this case since plaintiff also accepted employment within 90 days of the transfer.

Plaintiff argues that no binding offer for and acceptance of the position occurred[3]

---

1. Although *Akins* was decided before FPM Letter 550–72 issued, FPM Letter 550–34 (Dec. 29, 1967) also discussed comparability in terms of substantially equal benefits and pay.

2. A federal employee gains job security if employment is offered and accepted before the 90–day period begins to run. Therefore, plaintiff's argument that any acceptance preceding the 90–day period is nugatory is inconsistent with the purpose of the severance pay statute.

3. In her complaint plaintiff alleged that she accepted the offer of employment. Compl. ¶ 7. Plaintiff's initial brief also stated: "Thus, in May 1983, IITRI began interviewing Federal employees for positions at the Bartlesville facility. Plaintiff was interviewed and offered a position

and that the 90–day period runs only after formal transfer. Neither argument is persuasive. IITRI extended a written offer, including a set salary, by letter of May 9, 1983, which plaintiff signed and returned. IITRI had the authority to extend the offer based upon the coordination agreement initiated in the spring of 1983. The 90–day period is calculated pursuant to the statutory wording, "within 90 days of the date of transfer." 5 C.F.R. § 550.701(b)(6). As defendant argues, "within" in the context of time means any time before a given date. *Accord* Black's Law Dictionary p. 1437 (5th ed. 1979). It is true that FPM Letter 550–72 utilizes the phrase "within 90 days after the transfer of the employee's function" in stating that an employee will be ineligible for severance pay if "the employee is employed in any position (comparable or otherwise) by the private organization within 90 days after the transfer of the employee's function." Plaintiff interprets this language to explain the regulation, which says "or within 90 days of the date of transfer accepts any employment with the private organization." The language of the FPM letter, however, refers to the consequences of continued employment, not acceptance of employment. In these circumstances the FPM letter really does not explicate the regulatory provision concerning acceptance of employment and does not give "within 90 days of the date of transfer" the gloss plaintiff argues for.[4]

Although the comparability issue need not be reached in this case, an observation can be made. Comparability of employment cannot be limited exclusively to salary and benefits. *See McGucken v. United States,* 197 Ct.Cl. 965, 971–72 (per curiam), *cert. denied,* 408 U.S. 926, 92 S.Ct. 2508, 33 L.Ed.2d 338 (1972) (severance pay denied when transfer offered was from general attorney-advisor position to position of real estate attorney-advisor, both having same

job description). In plain terms the position of a marketeer differs both in style and actual responsibilities from a technical analyst position. Severance pay should be available to an employee who timely declines fundamentally different employment with a private sector successor entity. In this case it is unnecessary to determine whether the two positions were comparable under the guidelines of FPM Letter 550–72 and, if so, whether the agency interpretation was reasonable, because plaintiff was offered and accepted employment with the successor private entity within 90 days of the termination of her federal employment.

### CONCLUSION

Based on the foregoing, defendant's motion for summary judgment is granted, and plaintiff's cross-motion for summary judgment is denied.

The Clerk of the Court will dismiss the complaint.

IT IS SO ORDERED.

No costs.

---

which she initially accepted." Plf's Br. filed Mar. 2, 1987, at 2 (citations omitted). Thus, plaintiff's assertion in her reply brief that there was no offer and acceptance seems questionable.

**4.** *Akins,* decided before FPM Letter 550–72 issued, interpreted the phrase as 90 days before

transfer. Even if plaintiff were correct that FPM Letter 550–72 interpreted "within 90 days of the date of transfer" to mean 90 days after transfer, the FPM Letter would be inconsistent with *Akins'* reading of section 550.701(b)(6), as well as the plain meaning of the regulation's language.