## FEDERAL SAVINGS & LOAN INS. CORPORATION v. GRAND FORKS BUILDING & LOAN ASS'N.

### Civ. No. 1835.

United States District Court
D. North Dakota, N. E. D.

Aug. 1, 1949.

Mart R. Vogel (of Wattam, Vogel, Vogel & Bright), Fargo, N. D., for plaintiff.

T. A. Toner (of Murphy & Toner), Grand Forks, N. D., for defendant.

NORDBYE, District Judge.

The question submitted is to be determined by the interpretation which should be accorded to Section 407(a) of the National Housing Act, 12 U.S.C.A. § 1730(a), which pertains to the voluntary termination of insurance of savings and loan accounts. Plaintiff brings this action to recover unpaid insurance premiums covering the period from July 17, 1947, to January 17, 1949. The premiums sought to be recovered pertain to a period after defendant voluntarily terminated its insurance with the plaintiff and during which period it received no insurance protection from the plaintiff. Plaintiff's action is bottomed upon the literal wording of Section 407(a) of the Act, which provides: "Any institution which is insured under the provisions of this title may, upon not less than ninety days' written notice to the Corporation, terminate its status as an insured institution upon a majority vote of its shareholders entitled to vote, or upon a majority vote of its board of directors or other similar governing body which is authorized to act for the institution. Thereupon its status as an insured institution shall immediately cease and all rights of its insured members to insurance under this title shall immediately terminate; but the obligation of the institution to pay the premium charges for insurance shall continue for a period of three years after the date of such termination."

Patently, there is no ambiguity in this provision, and a reading of the section in the usual and ordinary sense leaves no real doubt that the Act by its terms requires an insured institution which has voluntarily terminated its insurance to pay the premium charges for insurance for the period of three years after the date of such termination, although its status as an insured institution ceases as of the date of the termination, and although all rights of its insured members to insurance likewise ceases as of the date of termination. However, defendant earnestly contends that such an interpretation results in the anomalous situation of an institution's being required to pay premiums for a three-year period when it is no longer granted insurance protection. Defendant challenges such a construction, therefore, because during that period plaintiff will suffer no insurance risk and therefore is entitled to no premium, and contends that the exaction of such premium moneys would constitute the taking of property without due process of law.

At the outset, it seems clear that Congress had the right to grant insurance privileges to savings and loan associations on any terms and conditions which it deemed necessary or desirable. The defendant has enjoyed the benefits of the insurance issued by the plaintiff corporation for over nine years and thereby has accepted all of the rights and benefits, as well as the burdens, of the Act. Without resorting to the legislative history, the reasons for the requirement of the payment of premiums after an institution voluntarily terminates its insurance may not be readily apparent. But no doubt any scheme of insurance for banking institutions by a government corporation's acting as an instrumentality of the United States may justify the payment of certain prescribed moneys into an insurance fund after a member has terminated its membership. Repeated withdrawals of membership in such a corporation in the apprehension of adverse economic impacts may threaten the stability of the insurance reserve fund and justify the requirement that additional premiums be paid into the fund by the withdrawing member for a stipulated period although no further insurance benefits inure to such

former member. Resort to the legislative history would indicate that the provision requiring an institution to pay premiums after the termination of its insurance contract was designedly placed in the Act to insure that end. True, the legislative history cannot control the Court in its judicial function to interpret fairly a statute according to the language used when the wording of the statute is plain and the meaning is unambiguous. But under such circumstances, the legislative history may be resorted to in so far as it tends to indicate that the usual and ordinary interpretation of the language of the statute is consistent with the very results sought to be attained by Congress. Reference may be made to the hearings before the Committee on Banking and Currency, House of Representatives, 73rd Congress, 2nd Session, on H.R. 9620, when the general counsel of the agency which was to administer the Act testified as follows: "The next, Section 306 (407), provides for the termination of the insurance. First, that a member institution withdrawing from the Federal Home Loan Bank System shall have its insurance automatically cease, but it is required to continue paying premiums for three years; second, if a majority of its voting shareholders or controlling body votes to withdraw, it may withdraw; and in that case its insurance stops, but its premium continues for three years. Those two provisions are put in, I believe, so that if they see a storm coming over the horizon and want to get out from under the loss, they may get out but will have to keep on paying for three years through the loss period."

Excerpts from the debates on the original legislation in 1934, Cong. Rec., Vol. 78, p. 11,192, likewise tend to indicate that the language employed means exactly what it says. The Chairman of the House Committee on Banking and Currency in reporting the bill to the House, said, among other things, "State-chartered institutions are permitted to withdraw upon a majority vote of their shareholders, but must pay three years' additional premiums in event of withdrawal." And a member of the House Committee on Banking and Currency also stated during the debate (Ibid., p. 11,200):

"An insured institution may withdraw from the insurance upon a majority vote of its stockholders, and its insurance rights will terminate immediately, but its obligation to pay premiums shall continue for three years."

In explaining the bill to the House of Representatives at this session, a member of the House Committee on Banking and Currency made the following observation (Ibid., p. 11,208): "The insurance, except in the case of Federal Savings and Loan Associations, is voluntary and will become effective only if such associations apply for it and are accepted. Provision is also made for withdrawal of institutions under proper regulations which will require continuation of the insurance premium under rules prescribed by the Corporation."

In March, 1935, an amendment was proposed in Congress seeking to reduce the period during which a withdrawing institution would be required to pay additional premiums, and a member of the Federal Home Loan Banking Board in discussing the proposed amendment before the Committee stated: "In the case of 407(a), we deal with the termination of insurance by the institution, and it seems to us that the institution has an obligation to other institutions to continue to pay premiums during that three year period. As I point out in that statement, losses may occur in the first or second year which would not show up at all, but those losses may be anticipated by the strong institutions, and if the strong institutions should withdraw from the Insurance Corporation in the first or the second year, the solvency of the Corporation might be very definitely jeopardized." Hearings before a Subcommittee of the Committee on Banking and Currency, U. S. Senate, 74th Cong., 1st Session, on S. 1771 and H.R. 6021.

And in May, 1938, when an amendment to Section 407 was proposed, the Chairman of the Farm Home Loan Board stated at one of the hearings (see Hearings before Subcommittee of the Committee on Banking and Currency, U. S. Senate, 75th Congress, 3rd Session, on S. 3874): "At present, voluntary withdrawal deprives them of this (insurance) coverage, and requires a three year premium payment following withdrawal * * *."

■ Defendant seeks to read into Section 407(a) an implied agreement that insurance coverage should be accorded during the three-year period the premiums are required to be paid, and urges that it would be unconscionable to exact the savings of its members as purported premiums for the existence of insured accounts when no insurance protection is afforded. It contends that because plaintiff has refused to provide insurance during the three-year period, its failure has deprived it of any right to recover premiums herein. But if insurance coverage was to be accorded during the three-year period, the Act would have so stated, instead of using clear and plain language which unmistakably indicates that insurance coverage ceases when an insured institution voluntarily terminates its status as such. And while defendant assumes to indulge in what seems to be a strained and unreal construction of the statute in question in order to avoid the plain intendment of the language employed, the inescapable answer to all the objections urged is that the Act unequivocally states that, upon voluntarily terminating its status as an insured member, the institution is no longer an insured institution and the rights of its members to insurance shall immediately terminate. Such language cannot be rationally reconciled with any theory of continued insurance coverage during the three-year period notwithstanding that the obligation to pay premiums continues during that period. The Court would not be justified in holding that insurance coverage continues when the Act unequivocally states that it ceases.

■ In view of the legislative history and the length of time this particular section has been in effect and under consideration from time to time by Congress, there can be no question but that Congress intended that any savings and loan institution which voluntarily cancelled its insurance would be obligated to pay insurance premiums for a three-year period, during which period it would be accorded no insurance coverage. Granted that it may seem burdensome for an institution to be re-

quired to pay premiums under such circumstances, and particularly when it does not appear necessary to insure the stabilization of the insurance fund by the exaction of additional premiums, this Court has no authority to re-make or revamp an executed contract, nor to indulge in any artificial or unreal construction in order to relieve the defendant of the seeming burdens of its contract. Granted also that arguments may be made that the broad purposes of the Act are better served if a withdrawing institution is granted insurance coverage during the three-year period, but that approach to the problem is for Congress, not for the courts.

Nor is defendant's contention persuasive that the premiums cannot be calculated after the termination of the insurance contract because Section 407(a) states that "premium charges for insurance" shall continue after the date of termination. It urges that, under Section 404(a) of the Act, 12 U.S.C.A. § 1727(a), premium charges are to be computed on "accounts of insured members" and that therefore there must exist accounts of defendant's members as to which plaintiff has furnished insurance coverage in order to legally compute the premiums. But if the Court is correct that Congress intended that a withdrawing member should be required to pay the insurance premium for a three-year period thereafter, then a reasonable and sensible interpretation must be accorded to the language used as to the method by which the premium should be computed. And while it is true that during the three-year period defendant does not have "insured accounts", it does have accounts of an insurable type which undoubtedly afford the basis for the computation of the premiums which Congress had in mind. This is borne out by the administrative definition which was promulgated in pursuance of the statute and which has been in effect in substance since 1935. This reads, in part, "Premiums and their uses—(a) Amount; payment. Each institution whose application for insurance

is approved by the Corporation shall pay to the Corporation a premium charge for such insurance equal to one eighth of 1 per cent of the total amount of all accounts of an insurable type plus all obligations to its creditors determined from the latest report of the insured institution filed with the Corporation * * *."

Therefore, in construing Section 407(a), the Court should avoid the absurd result which would obtain if it concluded that there was an obligation to pay a premium for three years but that the premium was to be computed on zero dollars. I conclude that defendant does have accounts of the insurable type and that these afford a legal and valid basis for the computation of premiums according to the contract between the parties. There is no claim that the mathematical computations of insurance premiums made by plaintiff on accounts of insurable types are incorrect.

This identical question has been before the United States District Court for the Southern District of New York in Federal Savings and Loan Corporation v. Edison Savings and Loan Ass'n, D.C., 83 F. Supp. 1007, wherein the plaintiff's motion for summary judgment was granted. In a short but well-reasoned opinion, Judge Goddard has disposed of substantially the same objections as urged by the defendant herein in seeking to avoid the entry of a summary judgment. The controlling facts of the New York case are identical with those of the instant case and the showing on the motion for summary judgment was substantially the same. Judge Goddard concluded that the provision in question could not be attacked as being in conflict with Article V of the Amendments to the Constitution of the United States. In this conclusion I concur.

In view of the premises, it follows that plaintiff's motion for a summary judgment must be, and hereby is, granted. An appropriate order may be submitted. An exception is allowed.