**PONCE FEDERAL BANK, FSB, Plaintiff,**

v.

**SECRETARY of the DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT OF the UNITED STATES, Defendant.**

**Civ. No. 86–0687 (RLA).**

United States District Court, D. Puerto Rico.

Aug. 3, 1988.

William H. Preston, Jr., Trias Doval Muñoz Acevedo & Otero, San Juan, P.R., for plaintiff.

Miguel A. Fernández, Francisco A. Besosa, U.S. Attys. Office, Hato Rey, P.R., for defendant.

## OPINION AND ORDER

ACOSTA, District Judge.

This case has been submitted, by joint stipulation of the parties, for adjudication without a hearing or trial.

The plaintiff's action for declaratory judgment at bottom involves the interpretation of 12 U.S.C. § 1703(f) of the National Housing Act of 1954. The defendant has moved the Court to dismiss this action alleging that declaratory relief would not resolve the controversy and thus would be purely advisory. Alternatively, the defendant asks that declaratory judgment be entered in its favor. After careful review, the Court orders as follows.

## PROCEDURAL HISTORY

The plaintiff, Ponce Federal Bank (Bank), filed an action for declaratory judgment before this Court on May 5, 1986. On August 27, 1986 the defendant, the Secretary of the Department of Housing and Urban Development of the United States (HUD) filed an answer and moved that the Bank's motion be dismissed based on lack of subject matter jurisdiction. Following 120 days of discovery and a pretrial conference, a trial date was set for June 1, 1987 before this Court. The final pretrial order was approved (docket No. 11 filed February 3, 1987) and stipulations, with exhibits, were submitted (docket No. 12 filed February 10, 1987). Based on the parties' submissions the trial date was vacated and the parties ordered to file memoranda of law.

In the subsequently submitted memoranda of law, HUD withdrew its motion for dismissal based on the lack of subject matter jurisdiction.

## FACTS

The essential facts in the case are not in dispute. In 1960 the Bank entered into a Contract of Insurance with HUD for Home Improvement Loans (Section 2) whereby the Bank was insured by HUD against default of mortgage loans granted pursuant to Title I of the National Housing Act, 12 U.S.C. § 1702 *et seq.* In exchange, the Bank reserves 10% of the net proceeds of each loan in a separate account at the Federal Housing Administration (FHA), an agency of HUD. 24 C.F.R. §§ 200.176, 201.32(a). This is known as the "general insurance reserve fund." In turn, the FHA/HUD reimburses the Bank for claims on defaulted loans including applicable fees and charges but not exceeding the total funds in the Bank's general insurance reserve fund, i.e., the aggregate of the 10% of each insured loan. 24 C.F.R. § 201.10(a)(1).

In order to defray the operating expenses of the FHA, the Bank is obligated to pay a premium. 24 C.F.R. § 200.179. The premium is not to exceed 1 per centum per year of the net proceeds of insured loans "for the term of obligation." 12 U.S.C. 1703(f). The Secretary of HUD has the authority to formulate the specific terms for the payment of insurance premiums. 12 U.S.C. § 1703(f), (h). In this case, insurance premiums are paid monthly.

On October 2, 1981, an officer of FHA/HUD notified the Bank by letter that its Title I Contract of Insurance would be cancelled within five days. The letter further stated that the cancellation did not affect any insurance benefits for Title I

loans previously approved. The letter noted that FHA/HUD would continue to pay claims up to the amount of the Bank's general insurance reserve fund and that the Bank was to continue paying premiums. This arrangement was observed by both parties.

Early in 1985, the Bank's general insurance reserve account was exhausted and on February 20, 1985, FHA/HUD returned unpaid claims to the Bank. As of that time, the Bank discontinued insurance premium payments.

### DISCUSSION

#### The Act

■ The issue before this Court is the interpretation of 12 U.S.C. § 1703(f) of the National Housing Act which states in part:

The Secretary shall fix a premium charge for the insurance here after granted under this section, but in the case of any loan ... such premium charge shall not exceed an amount equivalent to 1 per centum per annum of the net proceeds of such loan ... *for the term of such obligation,* and such premium charge shall be payable in advance by the financial institution and shall be paid at such time and in such manner as may be prescribed by the Secretary. (Emphasis added.)

The plaintiff contends that HUD's position requiring the Bank to continue the monthly payment of insurance premiums "for the term of such obligations" of each loan when FHA accepts no insurance risk and provides no insurance benefits is an "unreasonable, arbitrary, capricious and oppressive interpretation" of the Act (Plaintiff's memorandum, docket No. 14, p. 4, submitted March 9, 1987). HUD maintains that the obligation to pay insurance premiums for each Title I loan (specifically, Section 2 of Title I, Home Improvement Loans) is accepted at the inception of the loan and extends until the loan matures or is paid out, whichever occurs first, even in the case where claims will not be paid due to exhaustion of the Bank's general insurance reserve fund.

Based on the plain language of the statute and absent additional statutory instruction, the Court agrees that the Bank's obligation to pay insurance premiums does not cease despite the discontinuation of insurance benefits.

In 1960, the Bank was accepted as a Title I lender and a Contract of Insurance for property improvement loans under Title I was signed by both parties. Such agreement was signed voluntarily by the Bank as was the subsequent granting of loans under Section 2 of Title I. Accordingly, the Bank accepted the benefits as well as the burdens of the contract terms. *See Federal Savings & Loan Ins. Corp. v. Edison Savings & Loan Assn.,* 83 F.Supp. 1007 (S.D.N.Y.) *aff'd,* 177 F.2d 638 (2nd Cir. 1949); *Federal Savings & Loan Ins. Corp. v. Grand Forks Building & Loan Assn.,* 85 F.Supp. 248 (D.N.D.1949).

The statutory language of 12 U.S.C. § 1703(f) of the National Housing Act is clear and unambiguous. The plain language of the statute requires the lending institution to pay insurance premiums for loans generated and approved pursuant to Title I *for the term of such obligation.* Absent further statutory authority regulating the lending institution's obligation to pay insurance premiums on eligible loans once the insurance contract is cancelled, this statute must be interpreted strictly and remain the primary authority regulating the applicable terms of the Contract of Insurance at issue here.[1] Although this interpretation may appear overburdensome to the plaintiff, the "/c/ourt has no authority to remake or revamp an executed contract, nor indulge in any artificial or unreal construction in order to relieve the /plaintiff/ of the seeming burdens of its contract." *Federal Savings & Loan Ins. Corp. v. Grand Forks Building & Loan Assn.,* 85 F.Supp. at 252. *Also see Federal Savings & Loan Ins. Corp. v. Edison Savings & Loan Assn., supra.*

---

**1.** Although the Court and HUD reach the same conclusion, the Court finds that HUD's argument which relies on 12 U.S.C. § 1715c and its legislative history is unpersuasive and not relevant because that statute clearly exempts Title I, Sec. 2 loans.

The plaintiff's argument that they are not obligated to pay insurance premiums on loans where insurance benefits have ceased, is based upon a perceived cause and effect relationship between two provisions of the insurance contract. These provisions are: (1) that the insurance benefits provided by HUD/FHA (the reimbursement of claims on defaulted loans) are not to exceed the Bank's individual general insurance reserve fund, and (2) that the Bank is required to help fund the service by paying monthly premiums. Although these provisions are clearly interrelated, the Act does not condition the payment of insurance premiums with the availability of funds in the general insurance reserve.[2] In fact, the Act does not associate the two provisions at all.

The first provision effectively limits insurance benefits to the availability of funds in the Bank's general insurance reserve which equals 10% of the total amount of Title I loans made by the Bank. 24 C.F.R. §§ 200.176, 201.32(a). On the other hand, the single factor controlling the obligation of the Bank to pay insurance premiums is the life of the loan, i.e., until the loan is paid out or matured, whichever occurs first. 12 U.S.C. § 1703(f). A simple reading of these regulations does not support the conclusion that there is a cause and effect relationship whereby the availability of funds in the general reserve fund limits the obligation of the Bank to pay insurance premiums. The Bank's argument creates ambiguity by dissecting the provisions of the Act and interrelating separate concepts in a way which defies the plain meaning of the statutes involved resulting in incorrect statutory construction. *Federal Savings & Loan Ins. Corp. v. Edison Savings & Loan Assn.*, 83 F.Supp. at 1009.

When statutory language is clear, it is often conclusive. *U.S. v. Clark*, 454 U.S. 555, 102 S.Ct. 805, 70 L.Ed.2d 768 (1982). Once the court has determined that the statutory language is clear and unambiguous, judicial inquiry is complete, *Burlington Northern Railroad Co. v. Oklahoma Tax Commission*, 481 U.S. 454, 107 S.Ct. 1855, 95 L.Ed.2d 404 (1987); *Rubin v. U.S.*, 449 U.S. 424, 101 S.Ct. 698, 66 L.Ed.2d 633 (1981), and there is no need to look elsewhere for further interpretation, *Petry v. Block*, 697 F.2d 1169 (D.C.Cir.1983). The duty of the judiciary becomes one of following that language and giving it effect. *Wisconsin Electric Power Co. v. Dept. of Energy*, 778 F.2d 1 (D.C.Cir.1985).

Furthermore, acceptance of the plaintiff's construction would lead to practices which could potentially result in financial instability for HUD/FHA. The Bank is suggesting that statutory construction supports forfeiture of administration funding for HUD/FHA in instances where a bank has prematurely exhausted its general insurance reserve fund. It is doubtful that Congress would have intended such interpretation.

In the case at bar, HUD/FHA allowed for the monthly payment of insurance premiums rather than payment of the full cost upon approval or at the inception of the loan. This arrangement was most advantageous for the Bank. The total premium amount, used to defray the costs of administrative funds in order to provide the benefit, was based upon the projected life of the loan. It is unreasonable to expect such obligation be discontinued simply because the general insurance reserve fund was exhausted by the Bank and benefits subsequently discontinued while the administrative expenses of the agency continue. In other words, although the Bank no longer receives the benefit of the insurance coverage, the obligation to pay premiums must

---

**2.** Because there is no clear link between the obligation to pay premiums and the availability of funds in the Bank's insurance reserve, it is not necessary to decide whether or not the Contract of Insurance was actually terminated. It is a fact that the discontinued generation of Title I Section 2 loans would eventually lead to the exhaustion of the general insurance reserve fund as the Bank's obligation to maintain the general insurance reserve also ceases. In addition, the Bank, as well as HUD/FHA, recognized that insurance premiums and benefits were to continue for loans made prior to the questioned termination because any question of termination of the Contract of Insurance was only prospective in nature. Therefore, whether or not the Contract of Insurance was terminated is not relevant to the issue before the Court.

continue for the insurance coverage already provided.

*Propriety of Declaratory Judgment*

■ In the defendant's Memorandum of Law to Accompany Stipulations (docket No. 12, submitted March 9, 1987), HUD contends that declaratory judgment does not resolve the controversy and consequently, requests that the present action before the Court be dismissed.

Although we agree that it is not proper to grant declaratory relief if the judgment sought does not settle the controversy between the parties, this is not relevant in the present case. *Panama Processes S.A. v. Cities Service Co.,* 362 F.Supp. 735 (S.D.N.Y.1973), *aff'd,* 496 F.2d 533 (2nd Cir.1974).

■ The single issue before the Court is whether or not the Bank's obligation to pay insurance premiums continues once the insurance benefits cease pursuant to the interpretation of 12 U.S.C. § 1703(f). This controversy is clearly identified and acknowledged by both parties in the pretrial order and in the stipulations submitted to the Court. Although HUD identifies other issues in its subsequently submitted memorandum, consideration of such existing controversies not properly raised by the defendant is inappropriate in this action. In any case, declaratory judgment need not settle *all* possible differences between the parties. *State Farm Mutual Automobile Co. v. Mid–Continent Casualty Co.,* 518 F.2d 292 (10th Cir.1972).

## CONCLUSION

In accordance with the above, the defendant's motion to dismiss is denied and summary judgment is granted in favor of defendant. Accordingly, the plaintiff is ordered to pay all insurance premiums due to the defendant for each loan made pursuant to the Contract of Insurance signed by both parties in 1960 until each loan matures or is paid out, whichever occurs first.

IT IS SO ORDERED.

